BIANCA HEXAMER, Appellant, *v.* WILLIAM H. WEBB, Respondent.

101 377
162 66

In order to establish the liability of one person for an injury caused by the negligence of another, it is not enough to show that the latter was at the time acting under an employment by the former ; it must be shown in addition that the employment created the relation of master and servant.

Defendant employed one B., who was engaged in "the roofing and cornice business," to make some repairs to the cornice of his hotel, in the city of New York. The defect was pointed out, but no price or plan for doing the work was specified ; the method of repair and the means to be employed being left entirely to the judgment of B., who agreed simply to remedy the defect. In doing the work the employes of B. suspended a ladder from the roof of the hotel, upon which planks were placed to serve as a scaffold. A gust of wind caused one of these planks to fall; it struck and injured plaintiff, who was passing at the time. Defendant was not in the city while the repairs were in progress, and had no knowledge of the manner in which the work was being done. In an action to recover damages for alleged negligence causing the injury,

*held,* that the complaint was properly dismissed; that the relation of master and servant did not exist between the defendant and B., but the latter was an independent contractor, and the men employed were his, not defendant's servants; also that it was immaterial that the work was charged for by the day.

It appeared that the hotel was separated from the sidewalk by an area fifteen feet wide. *Held,* that the scaffold thus suspended was not a nuisance, nor was it violative of a city ordinance prohibiting the hanging of any goods or other things in front of a building at a greater distance than one foot.

*It seems* the ordinance does not apply to a temporary structure erected for the purpose of repairing a building.

(Argued January 22, 1886; decided February 9, 1886.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made January 14, 1884, which affirmed a judgment in favor of defendant, entered upon an order dismissing the complaint on trial.

The action was brought to recover damages for injuries alleged to have been caused by defendant's negligence.

It appeared that some work was being done upon the cornices of defendant's hotel, in the city of New York, by men in the employ of one Burford, who carried on "the roofing and cornice business." A ladder was suspended from the roof, upon which were two planks fastened to the ladder by ropes; this furnished a scaffold for the workmen, which was shifted from place to place as the work progressed. The wind was blowing hard and cut the ropes by striking the scaffold against the building. As they were moving the scaffold a gust of wind raised the planks and they fell to the ground; one of them struck upon the sidewalk, bounded and hit the plaintiff, injuring her seriously. Mr. Burford was called as a witness for plaintiff. He testified that he sent the men to do the work at the request of the defendant; that the latter spoke to him two or three times about doing something to keep the pigeons away from the eaves, as they were becoming a nuisance and were injuring the building. The witness then testified, "Finally, he told me he was going in the country, something must be done; I told him to make himself

easy, I would do the best I could for it, and it was a very difficult place to get at, but I would do the best I could for him, do something." This was all the contract. The witness sent in a bill after the work was finished, charging by the day for his workmen, and for the materials used.

Further facts are stated in the opinion.

*I. T. Williams* for appellant. The workmen, including Burford, were defendant's servants. (S. & R. on Neg., §§ 70, 71, 76, 77, 98; *Chicago* v. *Loney,* 6 Ill. 383; *Arc. F. Ins. Co.* v. *Austin,* 69 N. Y. 470; *Blake* v. *Ferris,* 5 id. 48; *Pack* v. *Mayor, etc.,* 8 id. 222; *King* v. *N. Y. C. R. R. Co.,* 66 id. 181; *Town of Piermont* v. *Loveless,* 72 id. 211; *Murray* v. *Curry,* L. R., 6 C. P. 24; *Cincinnati* v. *Stone,* 5 Ohio St. 33; *St. Paul* v. *Sietz,* 3 Minn. 297; *Blake* v. *Thirst,* 2 Hurlst. & N. 29; *Morgan* v. *Bowman,* 22 Mo. 538; *Callahan* v. *B., etc., R. R. Co.,* 23 Iowa, 562.) The ladder or staging as suspended was a nuisance. (*Dygert* v. *Schenck,* 23 Wend. 446, 447; *Congreve* v. *Smith,* 18 N. Y. 79; *Clifford* v. *Dam,* 81 id. 53; *People, ex rel. Riley* v. *Mayor, etc.,* 49 How. 277; *Cook* v. *Vincent,* 4 Hun, 320; Whart. on Neg., § 187; *Robbins* v. *Chicago,* 4 Wall. 657; *Storrs* v. *City of Utica,* 17 N. Y. 104; Serg. & Rawle on Neg., §§ 83, 84; *Ellis* v. *Sheffield Gas Co.,* 2 El. & Bl. 767; *Congreve* v. *Morgan,* 5 Duer, 495; *Creed* v. *Hartmann,* 29 N. Y. 591; Ordinances of N. Y. City, § 52.) The work to be done being intrinsically dangerous, defendant, having authorized it, will be regarded as the author of the mischief resulting from it. (2 Thomp. on Neg. 901; Moak's Underhill, 277; *Sulzbacker* v. *Dickie,* 51 How. Pr. 500; *Glickauf* v. *Manser,* 75 Ill. 289; *Leslie* v. *Pound,* 4 Taunt. 649; *Creed* v. *Hartmann,* 29 N. Y. 591; *Irvin* v. *Wood,* 4 Rob. 138; 51 N. Y. 224; *Wood* v. *Luscomb,* 23 Wis. 287.) The injury complained of having resulted from an act it was absolutely necessary for Burford to do in order to accomplish the desired end, it may be said to have been directed to be done by defendant, and he is, therefore, liable for the injuries resulting. (*Water Co.* v.

*Ware,* 16 Wall. 566; *McCafferty* v. *S. D. & P. M. R. R. Co.,* 61 N. Y. 178, 183.)

*George S. Hamlin* for respondent. There is no presumption of negligence in this case from the falling of the plank, because the facts in regard to its falling are all proved. (Burrill on Circ. Ev. 36; *Miller* v. *Ship Resolution,* 2 Dallas, 22; *Mullen* v. *St. John,* 57 N. Y. 571.) In order to establish negligence, it must be shown that there was an absence of that care which a man of ordinary prudence would have used under the circumstances. (Shearm. & Redf. on Neg., §§ 4, 12; Thomp. on Neg. 1234; *Harvey* v. *Dunlop,* Lalor, 193; *Hatfield* v. *Roper,* 21 Wend. 615; *Brown* v. *Kendall,* 6 Cush. 392; *Losee* v. *Buchanan,* 51 N. Y. 476; *Stewart* v. *Hawley,* 22 Barb. 619; *Calkins* v. *Barger,* 44 id. 424; 55 N. Y. 572.) In order to render a person liable for the negligence of others, it must appear affirmatively that the relation of master and servant existed. The burden is upon the plaintiff to show the existence of this relation. (*King* v. *N. Y. C. & H. R. R. R. Co.,* 66 N. Y. 184.) The employment of Burford was the employment of a contractor and not of an agent or servant. (Shearm. & Redf. on Neg., § 76; *Blake* v. *Ferris,* 5 N. Y. 58; *King* v. *N. Y. C. & H. R. R. R. Co.,* 66 id. 182; *Devlin* v. *Smith,* 89 id. 470; *Rapson* v. *Cubitt,* 9 Mees. & Wels. 710; *Earl* v. *Calkins,* 85 Penn. St. 240.) Burford was either a contractor or the agent of the defendant to hire the men and procure the materials for the performance of the work. (5 N. Y. 58.) The fact that no specific price was fixed for the work, and that, in his bill rendered, Burford charged the defendant for the services of his men by the day is immaterial. (Shearm. & Redf. on Neg., § 77; *Corbin* v. *Am. Mills Co.,* 27 Conn. 280; *Sadler* v. *Henlock,* 4 El. & Bl. 570; *Harrison* v. *Collins,* 86 Penn. St. 53.) The persons actually engaged in the performance of the work were the servants of Burford, the contractor, and not of defendant. (*Quarman* v. *Burnett,* 6 Mees. & Wels. 509; *Kelly* v. *Mayor, etc.,* 11 N. Y. 436; *Park* v. *Mayor, etc.,* 8 id. 226; *Blake* v. *Ferris,* 5

id. 57 ; *McMullen* v. *Hoyt,* 2 Daly, 271 ; *Laugher* v. *Pointer,* 5 Barn. & Cres. 560 ; *Reedie* v. *London & Northwestern R. R. Co.,* 4 Exch. 244 ; *Hobbet* v. *Same,* id. 257.)   The principle is the same in cases where the management of real estate is involved, as in other cases of negligence.   (*King* v. *N. Y. C. & H. R. R. R. Co.,* 66 N. Y. 181, 184, 185 ; *McCafferty* v. *S. D. & P. M. R. R. Co.,* 61 id. 178, 185 ; *Milligan* v. *Wedge,* 12 Ad. & Ell. 737 ; *Rapson* v. *Cubitt,* 9 Mees. & Wels. 713 ; *Reedie* v. *London, etc., R. R. Co.,* 4 Exch. 244 ; *Hobbit* v. *Same,* id. 257.)   This action cannot be maintained on the ground of a nuisance created, maintained or authorized by the defendant.   (*Dickinson* v. *Mayor, etc.,* 92 N. Y. 588 ; *Nolan* v. *King,* 97 id. 571 ; *Howard* v. *Robbins,* 1 Lans. 65 ; *Peckham* v. *Henderson,* 27 Barb. 207 ; *Griffith* v. *McCullum,* 46 id. 561 ; *Commonwealth* v. *Passmore,* 1 Serg. & Rawle, 219 ; *People* v. *Cunningham,* 1 Denio, 533 ; *Nolan* v. *King,* 97 N. Y. 571 ; *Davis* v. *Mayor, etc.,* 14 id. 524 ; 4 Exch. 257 ; *Stevens* v. *Armstrong,* 6 N. Y. 435 ; *Reedie* v. *London, etc., R. R. Co.,* 4 Exch. 244, 256–257 ; *Hobbit* v. *Same,* id. 254 ; *Moore* v. *Gadsden,* 93 N. Y. 17 ; *Knupple* v. *Knickerbocker Ice Co.,* 84 id. 491 ; *Massoth* v. *D. & H. C. Co.,* 64 id. 532 ; *McGrath* v. *N. Y. C. & H. R. R. R. Co.,* 63 id. 531.)   The owner is liable where the thing contracted for is, of itself, the cause of the injury ; and is not liable where the injury is caused by something collateral to that contracted for.   (*King* v. *N. Y. C. & H. R. R. R. Co.,* 66 N. Y. 185 ; *Storrs* v. *City of Utica,* 17 id. 104, 107 ; *Pack* v. *Mayor, etc.,* 4 Seld. 222 ; *Kelly* v. *Mayor, etc.,* 1 Kern. 432 ; *Water Co.* v. *Ware,* 16 Wall. 566 ; *Ferguson* v. *Hubbell,* 97 N. Y. 511.)   The court will presume, in the absence of evidence to the contrary, that the defendant contemplated the accomplishment of the objects contracted for in a lawful rather than an unlawful manner.   (*Butter* v. *Hunter,* 7 Hurlst. & Norm. 825, 832 ; *Earl* v. *Beadleston,* 10 J. & S. 294, 301.)

MILLER, J.   This action was brought by the plaintiff to recover damages alleged to have been sustained by means of the negli-

gence of defendant's agents and servants in making repairs and
improvements upon the hotel of the defendant, situate in the
city of New York. The alleged negligence consisted in fixing
and securing the staging used in performing the work, and the
proof showed that the ladder used as a scaffold was suspended
from the roof over the eaves of the hotel, and that upon it were
placed planks which were used as a platform upon which the work-.
men employed stood to do the work. This scaffold was moved
from time to time around the bay windows from place to place.
A heavy wind was blowing, and while shifting the ladder, a gust
came, and the working of the wind and the grating against the
cornice and wall cut the rope which held the planks on the lad-
der, and the wind turned the planks up so that they fell, and one
of them in falling to the sidewalk bounded and struck the plain-
tiff. One Burford, who was engaged in the roofing and cornice
business, was employed by the defendant to do the work, which
was intended to obviate a difficulty caused by pigeons making
their nests under the eaves of the roof of the hotel.

At the close of the testimony, a motion was made to dismiss
the complaint upon the ground, among others, that if there was
proof of negligence, it was not the negligence of the defendant,
or his agents or servants, but of an independent contractor, and
the plaintiff's counsel then asked to go to the jury upon several
grounds, which were stated and refused. The motion to dis-
miss the complaint was granted, and the defendant's counsel
excepted to the decision of the court.

The employment of Burford was of a general character, and
the contract between him and the defendant was not restricted
as to time or amount, or the specific services which were to be
rendered. The accident occurred while Burford and his men
were engaged in the performance of this work, and this action
was sought to be maintained upon the ground that the workmen
employed, including Burford, were the servants of the defend-
ant, and that the defendant as owner of the real estate was
responsible to third persons for the carelessness, negligence or
want of skill in those who were carrying on or conducting the
business, and this whether the persons employed were working

for wages or on contract. We think that the principle laid down has no application to the facts presented in the case at bar. As a general rule, where a person is employed to perform a certain kind of work, in the nature of repairs or improvements to a building by the owner thereof, which requires the exercise of skill and judgment as a mechanic, the execution of which is left entirely to his discretion, with no restriction as to its exercise, and no limitation as to the authority conferred in respect to the same, and no provision is especially made as to the time in which the work is to be done, or as to the payment for the services rendered, and the compensation is dependent upon the value thereof, such person does not occupy the relation of a servant under the control of the master, but he is an independent contractor, and the owner is not liable for his acts or the acts of his workmen who are negligent and the cause of injury to another. If the owner of a building employs a mechanic to make repairs upon the same without any specific arrangement as to terms and conditions, such employment is in the nature of an independent contract, which imposes upon the employe the responsibility incurred by acts of negligence caused by himself or those who are aiding him in the performance of the work. It is absolutely essential in order to establish a liability against a party for the negligence of others, that the relation of master and servant should exist. In *King* v. *N. Y. C. & H. R. R. R. Co.* (66 N. Y. 181, 184) the rule applicable to such a case is laid down by ANDREWS, J., as follows: "It is not enough in order to establish the liability of one person for the negligence of another, to show that the person whose negligence caused the injury was, at the time, acting under an employment by the person who is sought to be charged. It must be shown, in addition, that the employment created the relation of master and servant between them. Unless the relation of master and servant exists, the law will not impute to one person the negligent act of another."

In the case considered, we think that by the contract between the defendant and Burford, the relation of master and servant was not created. Burford was a mechanic engaged in a particular kind of business which qualified him for the perform-

ance of the work which he was employed to do. By the
arrangement with the defendant he was an independent con-
tractor engaged to perform the work in question. He was
employed to accomplish a particular object by obviating the
difficulty which he sought to remove. The mode and manner
in which it was to be done and the means to be employed in its
accomplishment were left entirely to his skill and judgment.
Every thing connected with the work was wholly under his
direction and control. No right was reserved to the defendant
to interfere with Burford or the conduct of the work. It was
the result which was to be attained that was provided for by
the contract without any particular method or means by which
it was to be accomplished. So long as the contractor did the
work the defendant had no right to interfere with his way of
doing it. The fact that no price was fixed and no specifica-
tions made as ·to the work to be done did not render the con-
tract one of mere hire and service, or create the relation of
master and servant between the parties. It cannot, we think,
be said that Burford did not agree to do the work required of
him, and that no . contract was made after the subject-matter
and the difficulties attending the work had been considered and
talked about. Burford said he would try and do something,
and the defendant replied he didn't care how he did it.
The conversation had amounted in law to an agreement that
Burford would perform all the work that was required of him
according to his own judgment as to what was necessary to be
done to accomplish the object intended. He was an independ-
ent contractor, and the men employed by him were his servants
and had nothing to do with the defendant. Burford was not
the agent of the defendant in any sense in purchasing the ma-
terial or in hiring the men to do the work. That the work was
charged for by the day could make no difference, and did not
alter the position which Burford occupied, in reference to the
defendant, as an independent contractor. It did not give the
defendant control over the job, or authority to hire or discharge
the men, or render him in any way liable to them instead of
Burford. It is very evident that the men employed were the

servants of Burford, and, therefore, the defendant cannot be made responsible for their negligence. The test to determine whether one who renders service to another does so as a contractor or not is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. (Shearm. & Redf. on Neg., § 76.) In *Blake* v. *Ferris* (5 N. Y. 48, 58), within the rule last stated it is held that when a man is employed in doing a job or piece of work with his own means, and his own men, and employs others to help him, or to execute the work for him, and under his control, he is the superior who is responsible for their conduct, no matter for whom he is doing the work. To attempt to make the primary principal or employer responsible in such cases would be an attempt to push the doctrine of *respondeat superior* beyond the reason on which it is founded. Upon these authorities there would seem to be no question as to the character of Burford's employment.

We are referred by the learned counsel for the appellant to numerous authorities as upholding the doctrine that Burford was not engaged in an independent employment, and that the defendant was, therefore, liable. After a careful examination we are satisfied that none of them sustain this position. Those cited from this State are certainly in a contrary direction. The other cases cited are clearly distinguishable from the case at bar, and establish no rule adverse to that which is supported, as we have seen, by the authorities in this State.

The claim that the ladder or scaffold suspended under the eaves of the hotel was a nuisance is not well founded. The proof on the trial did not show that the building was on the line of the street. It did show that the hotel was separated from the sidewalk by an area of fifteen feet. Without further proof it is difficult to see how the ladder or staging could be regarded as such an obstruction to the street as to constitute a nuisance. The action is based upon the ground of negligence, and there is nothing in the complaint alleging that the scaffold

was suspended over the sidewalk or was in any respect an ob-struction to the street. The gist of the action is negligence and unskillfulness in the construction of the scaffolding. It may be added that the scaffold itself was suspended for a legit-imate purpose connected with the reparation and improve-ment of the building. It was not necessarily injurious and dangerous or an obstruction on the street, and if properly used might well be employed for the purpose intended. It could only become dangerous by being improperly constructed or by some wrongful and willful act. In view of all the facts it can-not, we think, be maintained that the scaffold necessarily was a nuisance.

The claim that the ladder was suspended in violation of the city ordinance is not well founded. The ordinance referred to prohibits the hanging of any goods, wares, or merchandise, or any other thing, in front of any building at a greater distance than one foot. It was aimed against the obstruction of the streets. It is not apparent that the ladder overhung the street, but even if such was the case, it was a mere tempo-rary structure, erected for the purpose of repairing the building, and not an obstruction within the meaning and spirit of the ordinance, which, it is manifest, was directed against goods, etc., which were exposed for sale, or for the purpose of attract-ing public attention thereto. The construction contended for would prevent the use of scaffolds in the reparation of build-ings, which never could have been intended.

It is also insisted that the work in question was intrinsically dangerous, and hence the party authorizing it would be liable whether he did the work himself or let it out on contract. The answer to this position is, that the work itself was not necessarily injurious or dangerous. It was merely necessary repairs or im-provements for the benefit of the building, which, under ordi-nary circumstances, could be made without any serious results. The accident was caused by a gust of wind, which might well occur in the performance of any work of a similar character, and which could not well be guarded against or provided for. The act itself could only become dangerous and cause injury

by some unforeseen circumstance, and the rule stated is not applicable.

There is, we think, no force in the position that the injury complained of was the result of an act absolutely necessary for the contractor to do in order to accomplish the desired end, and the suspending of the ladder may, therefore, be said to have been done by the defendant, and he is liable, although it was done by an independent contractor. It is apparent, from the evidence, that the injury resulted, not from any thing contracted for by the defendant, but something collateral thereto. The defendant's contract related to the improvement of the building alone. What was necessary to be done for that purpose, and the manner in which it should be done, rested with the skill and judgment of the contractor. The defendant was absent at the time, and had no knowledge of what was done or the manner in which it was done. The doing of the work and the mode in which it was to be accomplished were matters collateral to the contract between the defendant and Burford. For these the defendant could not be held responsible.

After a careful consideration of the questions presented, it follows that no error was committed by the judge in dismissing the complaint, or in his refusal to allow the case to go to the jury, nor did he err upon the trial in striking out the testimony given as to the declaration of one of the witnesses sworn upon the trial.

The judgment should be affirmed.

All concur.

Judgment affirmed.