[Civil No. 1678.   Filed September 22, 1919.]

[183 Pac. 740.]

SWANSEA LEASE, INCORPORATED, Appellant, v. ANNA C. MOLLOY, Administratrix of the Estate of JAMES CHAPMAN, Deceased, Appellee.

1. CONSTITUTIONAL LAW—MASTER AND SERVANT—EMPLOYERS' LIABILITY LAW DOES NOT VIOLATE PROTECTION OF LAW CLAUSE.—The employers' liability law is not violative of Const. U. S. Amend. 14.

2. MASTER AND SERVANT—PLAINTIFF MUST SHOW THAT HE WAS SERVANT WHEN INJURED.—In action under employers' liability law, defendant cannot be held liable unless the injured person was an employee, and the burden rests upon the plaintiff to prove that relationship.

3. MASTER AND SERVANT—INJURED PARTY NOT A SERVANT, BUT INDEPENDENT CONTRACTOR.—A contract by which plaintiff's intestate and others agreed to sink a shaft for defendant according to specifications and at a price per foot, they to have full control over the manner and method of doing the work, reserving to defendant a right to inspect and direct changes of work not done according to agreement, nor in workmanlike manner, requiring continued maintenance of three shifts and providing against employment of persons objectionable to defendant, *held* to make intestate an "independent contractor," and not a servant, within employers' liability law.

4. APPEAL AND ERROR—EVIDENCE ADMITTED WITHOUT OBJECTION CONSIDERED.—In a personal injury action, where there was an agreement establishing the relation of independent contractor, and parol testimony was admitted practically without objection for the purpose of showing what was done under the contract, and that the real contract was one of employment, such evidence must be considered in determining the appeal, regardless of its competency.

5. MASTER AND SERVANT—INJURED PARTY INDEPENDENT CONTRACTOR, NOT SERVANT.—Plaintiff's intestate, who with others contracted to sink a shaft for defendant at a price per foot, *held* to be an independent contractor, and not a servant, within employers' liability law, notwithstanding defendant's deduction of hospital fees and the violent act of its superintendent in running away two of intestate's employees, not done under lawful power to discharge, its insuring against injuring intestate, its agreement to do the hoisting, its payment for the work at time of paying employees, and its action in ordering waste dumped in another place, although not directing manner of work in extending a trestle necessitated by the change of dumping place of waste in doing which latter intestate was killed.

APPEAL from a judgment of the Superior Court of the county of Yuma. Frank Baxter, Judge. Reversed.

STATEMENT OF FACTS BY THE COURT.

Action to recover the damages given by the employers' liability law (Civ. Code 1913, pars. 3153–3162) for personal injuries suffered by James Chapman, which resulted in his death. The plaintiff alleges that the said deceased was in the employ of the defendant, and that he was injured by accident arising out of and in the course of his said employment, which resulted in his death. The defendant denied that deceased, when injured, was in defendant's service, but alleges that deceased was engaged with two other persons in the performance of a contract which deceased, with two other persons had entered into with defendant, and while so occupied as independent contractor the deceased was injured and died therefrom. The plaintiff replies to such defense and alleges as follows:

" . . . That said Chapman with two other miners, was hired and employed by the defendant to sink a certain shaft in and upon the mining properties of the defendant, at Swansea, Arizona, at the agreed price of $34 per foot, which said hiring and employment was evidenced by a certain instrument in writing, a copy of which, marked Exhibit A, is annexed hereto and made a part of this reply, which said instrument in writing was executed on the day of its date, by said Chapman and said other two miners, on their own behalf, and by one Ernest Lane, the superintendent and manager of the defendant corporation, thereunto duly authorized by the defendant, on behalf of the said defendant; but that said contract and instrument in writing was, and is, a device and means con-

trived and put into effect by the defendant for the purpose and with the intent of enabling the defendant to exempt itself from the liability created by chapter 6, title 14, Revised Statutes of Arizona of 1913, and said contract is, and was at all times, void to that extent.''

The reply further sets forth that in its dealings with Chapman under said contract it treated him as its employee, by compelling him to pay hospital fees and ground rent as its other employees were required to pay; that it insured the said Chapman against accident, and upon his death it reported such death to the indemnity insurance company, and presented a claim against such company for the death of said Chapman as an employee of said defendant; that it paid to said Chapman wages.    Consequently:

''The defendant is, and by right ought to be, estopped to assert that said Chapman was not an employee of the defendant, and is estopped to assert that said Chapman was an independent contractor at the time of the fatal accident which resulted in the death of said Chapman.''

The contract is dated June 13, 1917, and is an agreement between defendant and F. V. Johnson, James Chapman, and M. D. Burris, by which the said second parties agree to sink a mining shaft a depth of 500 feet, for which they were promised a compensation of $34 per foot of depth.    The contract specifies the duties and obligations of the parties in detail. Clauses added to the contract provide for the time of commencement of the work and its continuous prosecution until completed; also for the deposit of 15 per cent of the contract price, to be held as a guaranty for the faithful performance of the agreement by the parties of the second part, and in case of their failure ''to faithfully perform and comply with all of the terms and conditions of this agreement, the amount so deposited shall be forfeited to the party of the first part as liquidated damages.    It is understood and agreed, however, that if the failure to perform and comply with the terms and conditions of this agreement by the parties of the second part is due to any fault of the party of the first part, the said parties of the second part are thereby unable to complete said shaft, the said moneys so deposited shall be paid over to the parties of the second part.''

The evidence is without conflict that the contract was fully completed by and in behalf of the parties of the second part,

and that the defendant company paid to this plaintiff, as administratrix of the estate of James Chapman, deceased, his proportion of the 15 per cent of the contract price, which was retained and deposited in the bank to be paid on the satisfactory completion of the contract work; that said amount so held and so paid out to said three parties was $1,695.75, and plaintiff was paid and she received of said amount the sum of $509.15 as a final settlement of James Chapman's portion of the contract price for the completion of the mining shaft. The contract has been fully performed by both parties thereto, and no dispute of that fact appears in the record.

The jury returned a verdict for the plaintiff, and the defendant appeals from the order refusing a new trial and from the judgment.

Mr. George J. Stoneman and Mr. C. O. Whittemore, for Appellant.

Mr. Thomas D. Molloy, for Appellee.

CUNNINGHAM, C. J. (After Stating the Facts as Above). The action is founded upon the employers' liability law, and the defendant has demurred to the complaint because and for the alleged reason that said law violates the Fourteenth Amendment of the Constitution of the United States. The demurrer was overruled by the lower court, and the ruling is assigned as error. This court has repeatedly held adversely to appellant's contention, and adheres to the said ruling on the authority of *Inspiration Consolidated Copper Co.* v. *Mendez*, 19 Ariz. 151, 166 Pac. 278, 1183, *Superior & Pittsburg Copper Co.* v. *Tomich*, 19 Ariz. 182, 165 Pac. 1101, 1185, *Superior & Pittsburg Copper Co.* v. *Davidovitch*, 19 Ariz. 402, 171 Pac. 127, and *Arizona Copper Co.* v. *Burciaga, ante*, p. 85, 177 Pac. 29, decided December 21, 1918.

The vital question presented by this record is whether there is any evidence to sustain the plaintiff's allegations that James Chapman, deceased, was, at the time of the accident which caused his death, engaged in the performance of his duties as an employee of the defendant company, in the meaning of that relation understood in the employers' liability law. The question is raised in a number of assignments of error and requires a decision. All parties must concede, if the contract

of June 13, 1917, was binding on James Chapman as written at the time of the accident resulting in his death, that his relation to the company defendant, as established by the said contract, was that of independent contractor, and not that of an employee, as understood in the employers' liability law.

The assignments of error deny the existence of any evidence tending to abolish the said contract.    The plaintiff sets out the contract, but alleges that the contract was a "device and means contrived and put into effect by the defendant for the purpose and with the intent of enabling the defendant to exempt himself from the liability created" by the employers' liability law.    As evidence that such contract was a "device and means contrived and put into effect by the defendant" for such purpose, the plaintiff sets forth in her reply that the defendant "caused and compelled said Chapman to pay hospital fees and ground rent, and paid liability insurance to a certain indemnity company [insuring Chapman] as an employee of the defendant company, . . . and immediately upon the death of said Chapman did report said death to such indemnity company, and presented to the said company a claim for the death of said Chapman as an employee of said defendant, and did pay wages to said Chapman at the time and in the manner that the other employees of the defendant were paid wages."

Are such circumstances evidence tending to establish as a fact that the contract of June 13, 1917, was a "device and means" used by defendant to avoid the burdens of an employer?    They are offered for the purpose of establishing, as a fact, that a written contract, which, on its face, creates a relation between the defendant and James Chapman, is in law one other than that of employer and employee, was not a binding contract, and was void for the reason that such paper was a mere device and means contrived to escape liability imposed by statute.    In other words, such circumstances are offered by the plaintiff as sufficient evidence of a fraud practiced by the defendant company to escape a duty imposed by statute, owing to an employee.

Chapman was not misled to his injury by the conduct of the defendant, and no party to the contract makes claim that the contract was abandoned.    The plaintiff concedes—at least, does not dispute—that the written contract was fully performed by all parties thereto, and that plaintiff, as admin-

istratrix of the estate of James Chapman, deceased, received from the defendant company, for and in behalf of such estate, final payment of its share of the contract price earned in the performance of the contract in sinking the shaft.

The facts in evidence are convincing to the effect that all parties to the said contract regarded the contract binding, and so conducted themselves, until after full performance of its terms. Consequently, the plaintiff has wholly failed to sustain by any competent evidence the allegation that said written contract was void, because it was entered into as a device and means contrived by the defendant to escape liability to an employee for an accident occurring in its mines, by which such employee was injured. The evidence relied upon by the plaintiff was not sufficient to establish such allegation of fraud and thereby abrogate said written contract. The trial court erred in refusing to instruct the jury to return a verdict for the defendant, because of such failure of the evidence in such particular.

The judgment is reversed and the cause remanded, with instructions to take such further proceedings in the cause as justice may require, not inconsistent with law.

BAKER, J. (Concurring).—I have reached the same conclusion in this case as the Chief Justice, differing from him only in the line of reasoning by which the result is attained. The case is of some importance, and it being one of first impression in this court, as to who is an independent contractor, I propose to state the reasons why I think the judgment of the lower court should be reversed.

The plaintiff's intestate, James Chapman, entered into a written contract with the Swansea Lease, Incorporated, the defendant, to sink a shaft of certain specific dimensions, on mining property occupied by the defendant, to the depth of 500 feet, at the agreed price of $34 per foot. The work on the shaft was to commence between July 1 and 10, 1917, and was to be prosecuted diligently until the shaft was completed; Chapman and his associates stipulating that they would work three shifts continuously, unless otherwise agreed with the defendant company. Chapman and his associates were to furnish all necessary labor and tools, also all necessary fuses and caps and candles, for the completion of the shaft, but if they desired to purchase these articles from the

company they might do so at cost price. All the work was to be done in a good and workmanlike manner, to be in line and square, and done to the satisfaction of the company, and the company was to have the right to inspect the work at any and all times, and direct any and all changes of work that had not been done, or was not being done, in accordance with the agreement. The company was to do all hoisting, and furnish a pumpman and necessary pump to keep the water down, and also was to furnish the necessary timbers framed and delivered at the collar of the shaft, and all hand and drill steel, all air drills, compressed air, and all air-pipe. The company was to measure up the work completed by Chapman and his associates on the 1st and 15th of each month, and pay them 85 per cent of the money due for all work completed up to the measurement date, as follows: On the 7th of the month to pay 85 per cent of the work measured up to the last of the month, and on the 23d of the month to pay 85 per cent of the work measured up to the 15th of the month; the balance of 15 per cent was to be deposited on pay days in the Citizens' National Bank of Los Angeles, to be paid by said bank to Chapman and his associates, upon the completion of said work and when the same was accepted by the company. The contract contained a further clause, worded as follows:

"  . . . The parties of the second part further agree not to hire any person objectionable to the party of the first part. . . . "

Within the time provided by the contract, Chapman and his associates commenced work on the shaft, and, as is usual and customary in the sinking of a shaft, constructed a trestle for the purpose of dumping the rock and waste material removed from the shaft. On October 20, 1917, while Chapman was upon the rails or runway of the trestle, and while he was in a stooping attitude, endeavoring to ascertain if the rails or runway of the trestle was level, in order to admit of the passage of the ore car used in the dumping, one of the rails turned or slipped while he was standing upon it, and he fell to the ground and was killed.

The vital question for determination in the case is whether the deceased, Chapman, was an employee of the Swansea Lease, Incorporated, within the meaning of the employers' liability law of the state, at the time of the happening of the unfortunate accident by which he lost his life, or whether he

was an independent contractor. It must be conceded that if the deceased was not an employee of the company at the time, the judgment in behalf of his widow and child cannot be sustained under the employers' liability law. That law imposes no obligation upon the defendant company unless Chapman was an employee of the company, and the burden rested upon the plaintiff to prove that relationship. Employers' Liability Law, Civil Code, 1913, pp. 1051–1054; *Harris* v. *McNamara*, 97 Ala. 181, 12 South. 103.

The defendant insists that, under the proofs, said deceased was not an employee of the company, but an independent contractor. An "independent contractor" is defined as one who exercises an independent employment, and contracts to do a piece of work according to his own method, and without being subject to the control of his employer, save as to the result of the work. *Alexander* v. *R. A. Sherman's Sons Co.;* 86 Conn. 292, 85 Atl. 514; LURTON, J., in *Powell* v. *Virginia Const. Co.,* 88 Tenn. 692, 17 Am. St. Rep. 925, 13 S. W. 691.

The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. The one indispensable element to his character as an independent contractor is that he must have contracted to do a specified work, and have the right to control the mode and manner of doing it. Shearman & Redfield on Negligence, 6th ed., par. 164; *Hexamer* v. *Webb,* 101 N. Y. 377, 385, 54 Am. St. Rep. 703, 4 N. E. 755.

An independent contractor is not in any legal sense a servant of his employer, but is one exercising an independent employment under a contract to do certain work by his own method, without the suggestion or the control of his employer, except as to the product or result of the work. *Parrott* v. *Chicago Great Western Ry.,* 127 Iowa, 419, 103 N. W. 352; *Williams* v. *National Cash Register Co.,* 157 Ky. 836, 164 S. W. 112; *Mountain* v. *Fargo,* 38 N. D. 432, Ann. Cas. 1918D, 826, L. R. A. 1918C, 600, 166 N. W. 416; Wood on Master and Servant, par. 424; Thompson on Negligence, par. 622. In Labatt's Master and Servant, volume 1, (second edition), paragraph 64, the author says that:

"The accepted doctrine is that, in cases where the essential object of an agreement is the performance of work, the rela-

tion of master and servant will not be predicated as between the party for whose benefit the work is to be done and the party who is to do the work, unless the former has retained the right to exercise control over the latter in respect to the manner in which the work is to be executed. This attribute of the relation supplies the single and universally applicable test upon which servants are distinguished from independent contractors.''

Looking solely to the contract, I am unable to perceive in its terms any reservation of power or right on the part of the defendant company to control or direct the manner or method in which the contractors should accomplish the work of sinking the shaft which they contracted to do. They had full, unrestricted and unqualified control over the manner or method in which the work was to be done. The defendant company had no authority to say or direct how the work should be performed, or the mode of doing it. The contractors were free to work where, when, and how they chose, except that they were required to maintain three shifts continuously. The defendant company had no control over the employees of the contractors, nor could the company authoritatively interfere in the manner of determining who should be employed by the contractors, or how many men the contractors might employ, or what wages should be paid to the men so employed. No power to discharge the men employed by the contractors is reserved to the company in the contract. The clause in the contract to the effect that no person or persons objectionable to the company should be employed by the contractors in no manner affected the status of Chapman and his associates as independent contractors in respect to the sinking of the shaft. In case the contractors employed anyone that was objectionable to the company, all that the company could do was to protest or object to the employment; it had no power or right to discharge such employee. The contractors, if they chose, might employ anyone they elected, provided they cared to run the chance of an abrogation of the contract for a breach of its terms. *Callahan* v. *Salt Lake City,* 41 Utah, 300, 125 Pac. 863. Besides, the relationship between the defendant company and the contractors is to be determined from the contract as a whole—by its spirit and essence—and not by the wording or phraseology of a single sentence or paragraph.

13 C. J. 525; *Foster* v. *City of Chicago,* 197 Ill. 268, 64 N. E. 322.

The clause in the contract reserving to the company the right to inspect the work at any and all times, and direct all changes of work that had not been done or was not being done in accordance with the agreement and in a mining and workmanlike manner, does not change the character of the contract. In Shearman & Redfield on Negligence, volume 1, sixth edition, paragraph 165, it is said that:

"Even reservation of the right of inspection at all times, and the requirement that the work must be done subject to the approval of the employer, does not make a servant of one who is doing the work, where there is no reserved right to dictate the details of the method being used, or any right to interfere with the servants of the party doing the work."

See, also, 16 Am. & Eng. Ency. of Law, 2d ed., p. 188; *Casement* v. *Brown,* 148 U. S. 622, 37 L. Ed. 582, 13 Sup. Ct. Rep. 672.

So much for the contract. Standing alone and by itself, the contract indisputably creates the relation of employer and independent contractor. The trial court, however, admitted a mass of parol testimony as to what the parties did under the contract. This evidence was admitted, apparently, for the sole purpose of showing what the true or real relationship was between the contractors and the company, as shown by the acts of the parties, notwithstanding the contract. We are not now concerned with the admissibility of this parol testimony on the score that the contract was plain and unambiguous, since it was received practically without objections, and no assignment of error has been made in that regard in this court, and it is therefore unnecessary to pass upon the question as to whether the trial court erred in admitting that evidence; it is a part of the record here, and must be considered in determining the appeal.

It appears from a portion of this testimony that the defendant company procured liability insurance based on all payrolls of the company including the payroll kept by the company for the payment of the contractors and their employees. It is to be borne in mind that the company was to do the hoisting. Under this stipulation, the company assumed the duty, not only to furnish proper and safe appliances with which to do the hoisting, but also the duty to see that the hoist was not negligently operated by its en-

gineer. In the event of the negligent performance of either one of these duties, whereby the contractors or their employees were injured, the law imposed a liability on 'the company. Under the circumstances, the company was certainly fully within its rights, and justified, as a matter of protection, in insuring itself against such liability, and the procuring of the liability insurance, although based upon all the payrolls, cannot be considered as having the effect to change the character of the contract.

It is in evidence that the superintendent at one time ran away two men who had been employed by the contractors. The circumstances surrounding this action are not clearly stated in the record, but we have concluded that it was an act of violence or threatened violence on the part of the superintendent. Clearly it was not the exercise of the lawful power to discharge the men, and therefore it could have no effect upon the dependency or independency of the contract.

The wages of the employees of Chapman and his associates were paid by the company out of the money due the contractors, based upon measurement of the work, at $34 per foot according to the contract. The contract itself provided that 85 per cent of the money due the contractors for sinking the shaft should be paid to them bimonthly. The statute law of the state requires that every corporation or company shall pay its employees their wages bimonthly, and the fact that the payment of the contractor's employees took place at the same time the company paid its own employees cannot be considered as affecting the character of the contract. The payment of workmen by the owner does not necessarily transform an independent contractor into a servant or agent. Thompson on Negligence, 2d ed., par. 629; *Scales* v. *First National Bank*, 88 Or. 490, 172 Pac. 499.

The deduction of the hospital fees from the pay of the contractors and their employees was not an act necessarily inconsistent with the independency of the contract. *Good* v. *Johnson*, 38 Colo. 440, 8 L. R. A. (N. S.) 986, 88 Pac. 439.

The contract does not in express terms provide where or how the waste rock and material taken out of the shaft should be dumped. The evidence shows that the contractors proceeded to dump the waste rock and material in a circular form around the collar of the shaft. After they had been engaged

for some time in dumping, the superintendent of the company instructed them to change the dumping, so as to dump the waste material from shaft No. 7 (the contractors were sinking shaft No. 7) straight across to shaft No. 5, and in building an extension of the trestle for this work Chapman was killed. This action by the superintendent is the nearest approach to the exercise of control over the work found in the entire record. In weighing the control exercised, we must carefully distinguish between authoritative control and mere suggestions or directions as to details. *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 53 L. Ed. 480, 29 Sup. Ct. Rep. 252.

"The mere fact of direction as to things to be done, without control over the method or means of doing them, does not make a contractor a servant." Shearman & Redfield on Negligence, vol. 1, par. 164.

I am of the opinion that the case upon this point comes within the class of cases of which *See* v. *Leidecker,* 152 Ky. 724, 154 S. W. 10, is one. In that case it appears that See was a farmer and owned an ox-team, with which he did heavy hauling. Leidecker employed See to haul a heavy boiler from the railroad station to a point several miles distant, where Leidecker was preparing to bore a well for oil. See with his team and hands loaded the boiler on to a wagon and hauled it to the place of delivery, and left the wagon standing with the boiler on it until the following morning. See and his men went to the place for the purpose of unloading. Leidecker wished the boiler unloaded at a particular place, and set in a particular way, and he gave directions to See accordingly. For the purpose of holding the boiler, or as a means of pulling it off the wagon, Leidecker directed See to put a chain around the boiler, and for the purpose of connecting it told See to pass the chain under the boiler and hand it up on the other side. In doing this, See went under the boiler and put his head between it and the coupling hole, whereupon the boiler toppled over toward the opposite side, striking him upon the head and badly mashed it. The court held that the relation of master and servant did not exist between See and Leidecker. See, also, *Pace* v. *Appanoose County* (Iowa), 168 N. W. 916, 17 N. C. C. A. 682; *Kellogg* v. *Church Charity Foundation,* 203 N. Y. 191, 197, Ann. Cas. 1913A, 883, 38 L. R. A. (N. S.) 481, 96 N. E. 406; *Ash* v. *Century Lumber Co.,* 153 Iowa, 523, 38 L. R. A. (N. S.) 973, 133 N. W. 888,

In this case the superintendent did no more than to direct where the dumping should take place. He assumed no control over the method or means of doing the work; that was left entirely to the contractors, and the fact that the superintendent directed the particular place at which the debris should be dumped was in no way inconsistent with Chapman's relation being that of an independent contractor.

The doctrine contended for by the plaintiff, that a person employed to do certain work may be an independent contractor as to certain parts of the work, and merely a servant or agent of the party employing him as to the residue of the work (1 Shearman & Redfield on Negligence, par. 165; *Powley* 'v. *Vivian Co.*, 169 App. Div. 170, 154 N. Y. Supp. 426; *Swart* v. *Justh*, 24 App. D. C. 596), has no application to the facts of the case. The dumping of the debris was but the smaller part of the larger work of sinking the shaft. It is necessarily implied in the contract. That the contractors regarded the dumping at the place indicated by the superintendent as a part of their work or duty under the contract is manifest from the undisputed testimony that they made no claim or demand for extra compensation and received none.

Upon the whole case, I am satisfied that the provisions of the agreement, and the acts of the parties under it, as disclosed by the parol testimony, are consistent only with the relation of Chapman being that of a person exercising an independent calling. He was in no sense an employee. This is particularly apparent from the undisputed testimony that Chapman worked from 16 to 18 hours a day, while the employees of the company were required to work only 8 hours a day (underground), in compliance with the state law, and that the scale of wages of the employees of the company was $5.15 a day, while the employees of Chapman and his associates received $7 a day.

For the foregoing reasons the judgment appealed from should be reversed.

ROSS, J.—I concur in the opinion stated by Judge BAKER.