[Civil No. 1701.  Filed November 28, 1919.]

[184 Pac. 996.]

THE ARIZONA-HERCULES COPPER COMPANY, a Corporation, Appellant, v. JOHN W. CRENSHAW, Administrator of the Estate of MANUEL SEGURA, Deceased, Appellee.

1. MASTER AND SERVANT — EMPLOYERS' LIABILITY LAW GOVERNING HAZARDOUS OCCUPATIONS.—The Employers' Liability Law, for the protection of employees in hazardous occupations, should be remedially applied to bring within its beneficial operation all workers whose accidental injuries are the inherent result of occupational risks and hazards.

2. MASTER AND SERVANT — "INDEPENDENT CONTRACTOR."—One under written contract to sink a shaft for a mining company at an agreed price per foot, specifying no definite number of feet nor time for completion, and obligating him to furnish all necessary labor and sink the shaft under instructions of company's foreman, *held* not an "independent contractor," but a mere agent of the company for the purpose of procuring workmen.

2. Who are independent contractors in mining work, note, 76 Am. St. Rep. 425.

3. EVIDENCE—PAROL EVIDENCE TO SHOW WHAT CONTRACT WAS.—Even
though a contract showed on its face that the party in charge
of the work was an independent contractor, still plaintiff seeking
damages for the death of his intestate servant, not a party to the
contract, under the Employers' Liability Law, was not precluded
from proving by parol testimony that such party was not in fact
an independent contractor, but the mere agent of the defendant
corporation.

4. MASTER AND SERVANT — INDEPENDENT CONTRACTOR — QUESTION FOR
JURY.—In an action under Employers' Liability Law for the death
of plaintiff's intestate who was working for one under a written
contract to dig a mine shaft for defendant, extrinsic evidence on
the question as to whether the contractor was an independent
contractor or a mere agent of defendant for the purpose of pro-
curing workers, *held* sufficient to go to the jury.

5. APPEAL AND ERROR—HARMLESS ERROR IN INSTRUCTION GIVING UN-
DUE PROMINENCE TO FACTS PROVEN WITHOUT CONTRADICTION.—
An instruction violating the rule that certain facts and circum-
stances should not be given undue prominence is not prejudicial,
where the facts singled out were proven by practically uncontra-
dicted testimony.

6. MASTER AND SERVANT—INDEPENDENT CONTRACTORS—INSTRUCTION AS
TO VALIDITY OF CONTRACT.—In an action under the Employers'
Liability Law for the death of a worker in a mine shaft, de-
fended on the ground that the deceased was employed by an inde-
pendent contractor, evidence involving the integrity of the contract
*held* to warrant the court in reading as a part of its charge
Employers' Liability Law (Civ. Code 1913, par. 3160), invalidat-
ing contracts to exempt employer from liability.

7. MASTER AND SERVANT — INDEPENDENT CONTRACTOR — ADMISSIBILITY
OF INDEMNITY INSURANCE POLICY.—In an action for the death of
a worker in mine shaft, defended on the ground that he was em-
ployed by an independent contractor, a policy of indemnity insur-
ance issued to the defendant covering deceased was admissible as
a circumstance to show the relation between defendant and the
contractor.

APPEAL from a judgment of the Superior Court
of the County of Maricopa. F. H. Lyman, Judge.
Affirmed.

STATEMENT OF FACTS.

On the eighteenth day of February, 1918, the ap-
pellee, John W. Crenshaw, as administrator of the
estate of Manuel Segura, sued the appellant, the

Arizona-Hercules Copper Company, a corporation, in the superior court of Maricopa county, in damages, for personal injuries resulting in the death of his intestate. The suit was brought under the Employers' Liability Law of the state (Civ. Code, 1913, pars. 3153–3162), and upon the theory that the appellant was engaged in the hazardous occupation of mining, and that appellee's intestate was an employee of the appellant as a miner at the time of his death; that on the eighteenth day of September, 1916, the said intestate was killed by an unavoidable accident arising out of and occurring and happening in the course of the said employment and whilst he was engaged in work, labor, and service for the appellant; and that said accident was due to the condition and conditions of such occupation and employment, and occurred and happened without any fault upon the part of the said intestate. On April 2, 1918, the appellant filed its answer to the appellee's complaint, and, after admitting its corporate existence and that it was engaged in the hazardous occupation of mining, denied each and every allegation in the complaint contained, except those expressly admitted, and furthermore pleaded as separate and affirmative defenses, that if the deceased came to his death as in the complaint alleged, it was by reason of his own carelessness and neglect, and that the deceased had assumed the dangers, risks, and hazards of the business, and further pleaded that the deceased was in the employment of another.

The case was tried to a jury and resulted in a verdict and judgment for the appellee for the sum of $5,000 damages. The appellant brings the case here on appeal, assigning a number of errors. Those deemed material or important are considered in the opinion.

Mr. W. L. Barnum and Mr. George J. Stoneman, for Appellant.

Messrs. Alexander & Christy, for Appellee.

BAKER, J. (After Stating the Facts as Above.)— The appellant, in one of its assignments of error, complains of the ruling of the lower court in refusing to grant its motion, made at the closing of all the evidence in the case, to direct the jury to return a verdict in its favor, on the ground and for the reason that the evidence was insufficient to prove that the appellee's intestate was in the employment of the appellant at the time of his death, but that, on the contrary, the evidence showed that the said intestate was in the employment of one Henry Nolte, an independent contractor. This assignment presents the controlling question in the case for determination and necessarily requires of us an examination into the state of the evidence. As to the law, it is frequently said in the cases that—

" . . . To draw the distinction between independent contractors is often difficult, and the rules which courts have undertaken to lay down on the subject are not always simple of application."

But we do not think that the legal principles applicable to the facts of the present case are greatly involved or difficult to comprehend.

In the recent case of *Swansea Lease, Inc.,* v. *Molloy,* 20 Ariz. 531, 183 Pac. 740, the writer of the present opinion had occasion to examine the question, and many authorities from different jurisdictions are there cited. There is a vast amount of learning upon the subject, and the collation of authorities, as found in the notes attached to the following cases, furnish an abundance of authorities upon the subject. *Richmond* v. *Sitterding,* 101 Va. 354, 99 Am. St. Rep. 879, 65

L. R. A. 445, 43 S. E. 562; *Messmer* v. *Bell etc. Co.,* 133 Ky. 19, 19 Ann. Cas. 1, 117 S. W. 346; *Cockran* v. *Rice,* 26 S. D. 393, Ann. Cas. 1913B, 570, 128 N. W. 583; *Bodwell* v. *Webster,* 98 Neb. 664, Ann. Cas. 1918C, 625, 154 N. W. 229.   In *Swansea Lease, Inc.,* v. *Molloy, supra,* we said:

"The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.  The one indispensable element to his character as an independent contractor is that he must have contracted to do a specified work, and have the right to control the mode and manner of doing it.  [Quoting] 1 Shearman & Redfield on Negligence, (6th ed.), par. 164; [citing] *Hexamer* v. *Webb,* 101 N. Y. 377, 385, 54 Am. Rep. 703, 4 N. E. 755.''

Reverting to the record, we find from a brief review of the primary facts that the unfortunate man (Manuel Segura) came to his death in the manner following: Several miners, among whom was the deceased, were engaged in sinking a shaft on the appellant's mine.  In the progress of the work, the men would be lowered to the bottom or raised to the mouth of the shaft by means of a heavy iron bucket with a bail, attached to a steel cable, one end of which was fastened to the bail of the bucket and then carried over a sheave-wheel which was set into a gallows frame directly over the mouth of the shaft; the other end of the cable was attached to and wound around a drum attached to a hoist which was operated by a gasoline engine.  The men would ride the bucket in being lowered to their work or when being raised to the mouth of the shaft after quitting work.  On the eighteenth day of September, 1916, the deceased and several other miners were upon the bucket and were being lowered in the shaft to their work when the

end of the cable became by some means detached from the bail of the bucket, at a point in the shaft about two hundred feet from the bottom, and the bucket and the men were precipitated or thrown to the bottom of the shaft. Four of the men were killed by the accident, including the appellee's intestate. That the accident happened unmixed with any negligence or want of care upon the part of the deceased is not controverted or questioned by the evidence.

It would be difficult to conceive, by any flight of the imagination, a case that would more completely fall within the letter and spirit of the Employers' Liability Law of this state than the case made by this uncontradicted evidence, providing, only, that the deceased was an employee of the appellant at the time of the accident. That law is a just and humane law. It was adopted pursuant to a constitutional mandate, and was enacted to carry out the legislative purpose that accidents sustained by those who do the work of an industry should be borne by the industry and paid out of the trade product, and not left to fall harshly upon the disabled worker, or his dependent widow and children. It supersedes, and entirely supplants, the historic concept of the common law, and all former statutes, that the right of recovery for industrial accidents can only arise from a breach of the master's duty as to care and safeguards. Hitherto the master could only be made to respond in damages when his servant was injured through his (master's) fault. The new concept is that the master must answer, regardless of his (master's) fault. This new and different scheme and basis of indemnity for industrial accidents should be remedially applied by the courts, with a view of bringing within the beneficial operation of the law all workers whose accidental injuries are the result of inherent occupational risks and hazards, rather than with the view of excluding

from the operation and protection of the law workers who justly and fairly fall within its provisions. *Arizona Copper Co.* v. *Hammer,* 250 U. S. 400, 63 L. Ed. 1058, 39 Sup. Ct. Rep. 553; *In re Rheinwald,* 168 App. Div. 425, 153 N. Y. Supp. 598.

The question is: Was the deceased, Manuel Segura, in fairness and fact, an employee of the appellant at the time of his death? The answer to the query depends upon what was the relation of Henry Nolte to the appellant. Was Nolte merely the agent of the appellant, or was he an independent contractor? The two questions are so correlated that the determination of one determines the other. Nolte put the deceased at work in the shaft; he hired him. This fact is conceded in the record. Nolte was engaged in sinking the shaft in which the deceased lost his life, under a written contract with the appellant; hence the importance of considering the contract. It is not practical to set the contract out at length, and we shall deal only with the stipulations found therein which tend to throw light upon the question. Counsel for the appellant strenuously contend that the contract upon its face shows that Nolte was an independent contractor. In this contention, we think counsel are clearly mistaken. The contract was for sinking a three-compartment shaft, 15 feet 10 inches, by 8 feet 8 inches, in the clear, at the agreed price of $35 per foot. The contract does not fix any definite number of feet that the shaft was to be sunk. No time is fixed within which the work was to be completed. Nolte was to furnish all necessary labor, and was to carry on the work of sinking the shaft under the instructions of the appellant's foreman. The fact that the contract does not fix the number of feet that the shaft was to be sunk left it optional with the appellant to close down the work at any time without breach of the contract. So, too, Nolte had

the right to quit work at any time without breaching the contract. At most, the contract was in legal effect merely that the appellant would pay Nolte for such work as he might do in sinking the shaft at the rate of $35 per foot. The work to be done was indefinite in amount, and subject to discharge and control by the appellant. Such a contract is not an independent contract, but is clearly dependent.

In the case of *Cockran* v. *Rice, supra,* the contract was to do plowing at the price of $1.25 per acre, without stating any specified number of acres to be plowed, and the court, in declaring such a contract not to be independent, said:

"To constitute an 'independent contractor,' the contract itself must be one the performance of which will produce a certain understood and specified result—a contract which contemplates a definite beginning, continuance, and ending. A test of the relationship between the employer and the employee is the right of the employer under the contract to control the manner and continuance of the particular service and the final result. No single fact is more conclusive as to the effect of the contract of employment, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself. Under the evidence in this case, there was no contract to plow any specified number of acres. Under the employment shown, Stevens could plow at a specified rate per acre and quit when he chose, or Rice could terminate such service at any time, without a breach of the contract to be performed. At most, the contract was merely to pay for such plowing as might be done by Stevens at the rate of $1.25 per acre. Such contract did not constitute Stevens an independent contractor."

The stipulation in the contract that the work of sinking the shaft should be carried on under the instructions of the foreman of the company is, in our opinion, inconsistent with the theory that the contract

was independent. Whether this clause means that the company's foreman was to have the right to give orders to Nolte in reference to the methods and details of accomplishing the work is not entirely clear, but we think that we are justified in giving that construction to the clause.

Conceding, as we do, that a contract independent in its nature, and made and entered into in good faith, and without any intent or purpose to avoid the liability fixed by the Employers' Liability Law, may be a valid and binding contract, although it may have the legal effect to avoid the liability fixed by the statute, yet it must be conceded that the courts will narrowly watch such a contract, and if a reasonable construction can be placed upon it, or any of its terms, that will preserve the liability of the employer as fixed by the statute, the courts will not hesitate to so construe the contract. If the appellant through its foreman had the right by virtue of this stipulation, as we think it did have, to instruct Nolte in reference to the methods and details of the work, Nolte was not an independent contractor, for the decisive test is: Who has the right to direct what shall be done and when and how it shall be done? In other words, Who has the right to control the work?

The provision that Nolte was to furnish all the necessary labor to accomplish the work, if it stood alone and was construed by itself, would indicate that Nolte was an independent contractor; but the relation of Nolte is to be determined from the contract as a whole—by its spirit and essence—and not by the wording or phraseology of a single sentence or paragraph. *Swansea Lease, Inc.,* v. *Molloy, supra.* Considering the contract as a whole, we think the provision in reference to furnishing the necessary labor is reasonably susceptible of the construction that Nolte was the mere agent of the appellant for the purpose

of procuring and furnishing laborers to do the work. It seems unreasonable to conclude that Nolte would have been willing to expend his money and occupy his time in procuring laborers to do the work under a contract which fixed no specified extent of the work and which contract might be terminated at any time by the appellant.

Assuming, however, but not conceding, that the contract on its face showed that Nolte was an independent contractor, still the appellee was not precluded from proving by parol testimony that Nolte in fact was not an independent contractor, but a mere agent of the appellant. The deceased, Segura, was not a party to the contract. The rule is that, as between a third party and either party to a contract, it may be proven by parol testimony that the contract is different from what it purports to be on its face. *Luckie* v. *Diamond Coal Co.* (Cal. App.), 183 Pac. 178; *Watson* v. *Hecla Mining Co.*, 79 Wash. 383, 140 Pac. 317. It was therefore permissible for the appellee to show, by parol testimony, not only the circumstances under which the contract was made by the appellant and Nolte, but also the conduct of the parties while the work was being done under it, for the purpose of establishing the true relation of Nolte to the appellant.

It appears from the evidence that Nolte was required to make, and did make, daily written reports to the appellant, as to the work being done in the shaft, showing the men employed therein, including the deceased; that he gave no bond or other security to the company for the faithful performance of the work, and that he had no means other than that earned from the company which he might use for the purpose of sinking the shaft, and that he was financially irresponsible, and that he did not obtain indemnity insurance against injury to the men working in

the shaft; that the company carried the deceased, Segura, on its pay-roll and paid him his wages; that the company deducted from his wages insurance and hospital dues; that the company procured indemnity insurance against liability for injuries to its employees, and paid premiums therefor, and made return of the compensation earned by its employees upon which the premiums were based as shown by its pay-rolls, and the deceased was included in such return; and that the company reported to the insurance company the accident wherein the deceased was killed. It may be that neither one of these facts, standing alone, would be sufficient to determine the relation of Nolte to the appellant; but if they all be considered together, in connection with the incomplete contract and the control of the work by the company as therein indicated, a case is made out sufficient to go to the jury upon the relation of Nolte to the company, and the jury having necessarily found by their verdict that Nolte was the mere agent of the company in the construction of the shaft, and, consequently, that the deceased, Segura, was a servant or employee of the company, their conclusion in that respect is binding upon us. At most, the evidence is susceptible of two interpretations—one that Nolte was an independent contractor, and the other that he was a mere agent—and, this being so, the question was one for the jury and not for the court.

The court in one instruction grouped a number of facts proven in the case and told the jury they might consider these facts, together with all the other facts and circumstances in the case, in determining whether appellee's intestate was an employee of the company. Complaint is made of this instruction, because it is said that it singles out certain facts and gives them undue prominence. We do not think there is any merit in this contention. The general rule is that an

instruction should not give undue prominence to facts by singling them out for special consideration, and ordinarily the instruction attacked would be held to be erroneous as violative of the rule; but on examination of the record we find the facts embraced in the instruction were all proven by practically uncontradicted testimony, and, this being so, we can see no valid reason why the jury should not be told that they might consider these facts with all the other facts and circumstances proven in the case. This the jury were told they might do. Had there been any serious dispute about the facts embraced in the instruction, our conclusion might be different. While we do not, under the circumstances, condemn this particular instruction, we do not approve of it as good practice. It would have been better had the instruction not been given. 38 Cyc. 1678; *Gordon* v. *Burris,* 153 Mo. 223, 54 S. W. 546; *Pilkins et al.* v. *Hans et al.,* 87 Neb. 7, 126 N. W. 864.

The court, as a part of its charge to the jury, read paragraph 3160 of Civil Code (1913), to the effect:

"That any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any employer to exempt himself or itself from any liability created by this chapter, shall to that extent be void. . . . "

This action of the court is attacked by one of the assignments of error for the reason that there was no evidence upon which to base such a charge. We differ with counsel for appellant on this point. There is evidence in the record that the contract between Nolte and the appellant on its face shows that it was executed on April 6, 1916. There is also evidence in the record that the notice stated that bids would be received for doing work up to 5 P. M., April 8, 1916. It further appears that the general manager of the appellant testified that the contract in question was

not executed or entered into until after the time had expired for the reception of bids. It further appears that the certificate of the notary public who took the acknowledgment of the contract bears no date. Upon these facts and circumstances, the court might well have given the charge. The integrity of the contract was involved.

Another assignment of error is based upon the ruling of the court, allowing the policy of indemnity insurance issued to the appellant by the Guardian Casualty & Guaranty Company, to be introduced in evidence. The policy was unquestionably admissible, as tending to show the real relation between the appellant and Nolte. True, it is not at all conclusive of that question, still it was a circumstance proper to be submitted to the consideration of the jury. In the case of *Laffery* v. *United States Gypsum Co.*, 83 Kan. 349, Ann. Cas. 1912A, 590, 45 L. R. A. (N. S.) 930, 111 Pac. 498, it is said:

"Where it was a material question for the jury whether one acting as superintendent of a mine was so superintending it for the owner as its employee, or operating it for himself as an independent contractor, evidence that the owner held insurance indemnifying it against loss and damages from accidents to laborers in the mine, and of the terms of the policy, and of the correspondence between the owner and the insurance company and with the alleged contractor, was competent as tending to show the real relation between the person so superintending the operation of the mine and the mine owner."

See, also, note to *Walters* v. *Appalachian Power Co.*, 13 N. C. C. A. 115–119.

The other assignments of error have been carefully examined, but we do not find either one of them to be tenable, and consider that they are not of sufficient interest to require separate study and discussion.

The evidence authorized the verdict. The amount of damages awarded is exceedingly small considering that the deceased left a wife and two children. The instructions fairly presented the law to the jury.

No just reason appears for disturbing the recovery in the appellee's favor, and we therefore affirm the order and judgment of the lower court.

CUNNINGHAM, C. J., and ROSS, J., concur.