[199 Pac. 132.]

CONSOLIDATED ARIZONA SMELTING COM-
    PANY, a Corporation, Appellant, v. JOHN
    EGICH, Appellee.

1. MASTER AND SERVANT—EMPLOYERS' STATUTORY LIABILITY NOT LIM-
    ITED TO INJURIES FROM INHERENT DANGER—"HAZARDOUS"—"CON-
    DITION."—Under Constitution, article 18, section 7, providing for
    the enactment of the Employers' Liability Law contained in Civil
    Code of 1913, paragraphs 3154–3158, and its provisions making the
    employer liable for the death or injury of employee caused by
    any accident due to conditions of a hazardous occupation, the

1. On constitutionality, application and effect of the federal Em-
ployers' Liability Act, see notes in 17 Ann. Cas. 331; 47 L. R. A.
(N. S.) 38; 48 L. R. A. (N. S.) 987; L. R. A. 1915C, 48.

employer is liable when the injury is caused by an accident due to conditions of the employment, which conditions need not be inherent in the occupation, but may arise from the manner in which the business is carried on, the word "hazardous" being defined as "exposed to; exposing to; or involving danger; risk or loss or calamity; perilous; risky"; and the word "condition" being defined as "mode or state of being; state or situation with regard to external circumstances; essential quality; property; attribute."

2. CONSTITUTIONAL LAW—STATUTE PROVIDING FOR EMPLOYERS' LIABILITY LAW NOT SELF-EXECUTING.—Constitution, article 18, section 7, providing for the enactment by the legislature of an Employers' Liability Law, *held* not self-executing.

3. MASTER AND SERVANT — EMPLOYERS' LIABILITY DEFINED BY CONSTITUTION.—The legislature, in the enactment of the Employers' Liability Law pursuant to Constitution, article 18, section 7, providing for an Employers' Liability Law, and defining what should constitute the employers' liability thereunder, had no power to add to or take away from the rights so defined.

4. CONSTITUTIONAL LAW—LIMITATION ON LEGISLATIVE POWER MAY BE EXPRESS OR IMPLIED.—A limitation on the legislative power may be by direct prohibition or by implication, and when it is by implication, its restraints on the legislature are no less binding than when expressly prohibited.

5. MASTER AND SERVANT — INJURY BY HAMMER FLYING OFF HANDLE ACTIONABLE UNDER STATUTE.—A miner, injured while breaking rocks with a hammer, as the result of the hammer head flying off handle, *held* entitled to damages under Employers' Liability Law, making employer liable where his injury is caused by an accident due to a condition or conditions of the occupation, since the condition of the occupation involves not only the place in which the employee works, but the tools with which he works.

6. DAMAGES — INSTRUCTION AUTHORIZING DAMAGES FOR MEDICAL EXPENSES WITHOUT EVIDENCE TO WARRANT INSTRUCTION, HELD GROUND FOR REVERSAL.—In action for injuries to employee under the Employers' Liability Law, the granting of an instruction, authorizing the jury to include in its verdict past and future expenses for medical and surgical aid, medicines, and nursing, without evidence sufficient to warrant such instruction, *held* reversible error.

7. DAMAGES—FUTURE EXPENSES FOR MEDICAL AND SURGICAL TREATMENT RECOVERABLE.—In action for injuries to employee under

---

6. On allowance for physician's service in action for personal injuries without evidence of the value thereof, see notes in **Ann. Cas.** 1913D, 150; 19 **L. R. A. (N. S.)** 920.

Employers' Liability Law, future expenses for medical and surgical treatment may be recovered when established by legal evidence.

APPEAL from a judgment of the Superior Court of the County of Yavapai. J. J. Sweeney, Judge. Reversed, with directions to grant new trial.

Messrs. Anderson & Ellis (Mr. Robert McMurchie, of Counsel), for Appellant.

Mr. Barnett E. Marks, for Appellee.

ROSS, J.—This is an action for damages under the Employers' Liability Law (Civ. Code 1913, pars. 3152–3162). The facts as to how the accident happened causing the plaintiff's injury are not controverted. The plaintiff was working for defendant in its mine on the 900-foot level, and on February 3, 1918, while standing on what is designated in the pleadings and evidence as a grizzly, breaking rocks with a hammer, as he had been instructed to do, the head of the hammer flew off of the handle and struck his right foot, breaking a toe. The grizzly consisted of railroad rails, placed parallel to each other and about six inches apart. When the head of the hammer struck plaintiff's foot, the foot slipped between the rails, plaintiff lost his balance and fell, wrenching and twisting the muscles, ligaments, and bones of his foot and ankle.

The defendant raised the question of the sufficiency of these facts to constitute a cause of action under the Employers' Liability Law, by demurrer, and at the trial by a motion for a directed verdict. The demurrer was overruled, and the motion for a directed verdict was refused. The plaintiff had judgment for $2,500, and the appeal is from the judgment and the order overruling the motion for a new trial.

The orders overruling demurrer and refusing to grant motion for a directed verdict are assigned as error. We state the defendant's proposition of law in its own language:

"They [the facts] show that the accident was proximately caused by the head of the hammer flying off and striking plaintiff's right foot. This is not an inherent risk of a hazardous occupation which is unavoidable by a workman. It is not an accident arising out of and in the course of his employment, and due to a condition or conditions of such employment, as is contemplated by our Employers' Liability Law, but is the ordinary risk, the ordinary happening which might take place on the public highway, if he were breaking stones there."

In other words, the proposition amounts to this, as we understand it: The proximate cause of the accident being the negligence of defendant in furnishing plaintiff with a defective hammer to do his work, the injury arose from an ordinary risk, and not an inherent or hazardous risk, it being the contention that the Employers' Liability Law covers only the latter kind of risk; that is, risks that are inherent in the occupation.

To sustain its position, the defendant refers us to many cases decided by this court, in which the elements going to constitute the cause of action under the liability law have been discussed, and points out therein many expressions tending to uphold its contention. The particular expression upon which the defendant relies is that we have said in those cases that "the risks and hazards must be inherent in the occupation" before the employee may recover.

That the defendant's position may be well understood, we again quote from its brief:

"Before an injured workman can recover under the Employers' Liability Act, it must affirmatively appear that the accident causing the injury was due

to an *inherent* risk or hazard of the occupation, and was unavoidable by the workman. This excludes accidents due to the employer's negligence.''

The learned counsel for defendant rely almost wholly upon what this court has said in other cases to vindicate and sustain their proposition. For instance, in *Arizona Eastern R. R. Co.* v. *Mathews, infra,* this language is used:

''It is evident that the accident must arise out of and also be *inherent* in the occupation itself; the condition or conditions that produce the accident must *inhere* in the occupation. . . . It would seem that, before an employee may recover for injury under this act, it must have occurred while he was at work in his occupation, and it must have been occasioned by a risk or danger *inherent* in the occupation.''

In *Calumet & Arizona Min. Co.* v. *Chambers, infra,* it is said:

''The surroundings in which plaintiff was performing his duties are described in the complaint with sufficient fullness to show that the risks and hazards assumed by the employee are great and *inherent* in the occupation, and unavoidable by the workmen. . . . Consequently, the facts pleaded are sufficient to set forth conditions of plaintiff's employment which require him to assume risks and hazards *inherent* in the occupation he was then engaged in, which he was not able to avoid, and continue in the occupation.''

In *Arizona Copper Co.* v. *Burciaga, infra,* it is said:

''The wrong giving the right of action is attributable, not to any fault, wrong, or negligence of the employer, but to the risks and hazards which are *inherent* in such occupation, and which are unavoidable by the workmen therein. . . . As clearly intimated by this court in *Inspiration Consolidated Copper Co.* v. *Mendez,* 19 Ariz. 151, 166 Pac. 278, 1183, the Employers' Liability Law is designed to give a right of action to the employee injured by accident occurring

from risks and hazards *inherent* in the occupation and without regard to the negligence on the part of the employer."

In *Inspiration Consolidated Copper Co.* v. *Mendez, infra,* it is said:

"The appellant contends, and I think his contention is correct, that the liability statute must be construed as one creating a liability for accidents resulting in injuries to the workmen engaged in hazardous occupations due to the risks and hazards *inherent* in such occupations without regard to the negligence of the employer, as such negligence is understood in the common law of liability; in other words, such statute creates a liability for accidents arising from the risks and hazards *inherent* in the occupation without regard to the negligence or fault of the employer."

In *Superior & Pittsburg Copper Co.* v. *Tomich,* 19 Ariz. 182, 165 Pac. 1101, 1185, it is said:

"The matters left open for inquiry were the amount of the damages the plaintiff was entitled to recover as measured by the allegations of the complaint and the evidence, and whether the accident was due to a condition or conditions of the employment, and such as is *unavoidable.*"

Counsel also contend that the Supreme Court of the United States, in *Arizona Copper Co.* v. *Hammer,* 250 U. S. 400, 63 L. Ed. 1058, 39 Sup. Ct. Rep. 553, in construing the Arizona Liability Law, and the decisions of this court, also had in mind that the liability created was one arising out of accidents *inherent* in the occupation, and quotes many expressions from that high court such as: "Employment designated as *inherently* hazardous and dangerous to workmen"; "to hazards *inherent* in the employment"; "risks *inherent* in the occupation"; and "due to such *inherent* conditions."

As we go along, we think we shall be able to show that the liability arises when the injury or death is caused by an accident due to a condition or conditions of the occupation, and that the accident need not necessarily happen by reason of an inherent risk or danger, but that it may arise from the manner in which the business is carried on. Section 7, article 18, of the Constitution is the fountainhead and source of the Employers Liability Law. It creates and defines a new liability of the employer to the employee. It names and points out the circumstances and conditions under which the liability may arise. It defines the rights that may accrue to an injured or killed employee, and directs the legislature to enact a law providing a method of procedure for the enforcement of those rights. The mandate to the legislature contained in said section adds nothing to the rights therein created. If the Constitution had stopped with the bare declaration of the right, the duty of the legislature to enact laws for its enforcement would have been just as imperative. The provision was not self-executing, and, whether commanded to supplement it with proper legislation or not, the obligation to do so was obvious, if the intention as expressed in the Constitution was to be carried out. So the direction to the legislature was not to create a new or different right of action, or to add to or take from the one declared by the Constitution, but to formulate laws whereby the rights secured may be realized. According to the definition, the liability of the employer depends upon the concurrence of the three following circumstances: (1) The existence of the relation of employer and employee; (2) injury or death while in the service of the employer in a hazardous occupation in one of the industries of mining, smelting, manufacturing, railroad, or street railway transportation, or other

proper industries; (3) the injury or death must have been caused by an accident due to a condition or conditions of the occupation, and not caused by the negligence of the employee killed or injured. If the relation of employer and employee exists, if the latter suffers injury or death in a named hazardous occupation caused by an accident due to a condition or conditions of the occupation, and not the negligence of the employee, all the constitutional facts are present, and constitute a right of action in favor of the employee against the employer. The legislature, in paragraph 3154, Civil Code (part of the Employers' Liability Law), has phrased the definition of the right thereby created in the language of the Constitution, and has said that the concurrence of the circumstances named above will give rise to a right of action in favor of the employee.

It is declared and determined in paragraphs 3155 and 3156 that the occupations in ten classifications of industries therein enumerated are hazardous within the meaning of paragraph 3154, and section 7, article 18, of the Constitution; and in paragraph 3158 it is provided that the injured employee may maintain the suit, and, in case death ensues, that the right of action survives in favor of the persons therein named in the order given.

However, the legislature, in paragraph 3155 has undertaken, by an independent observation of its own, to explain, not so much the right of action as defined, as the dangerous character of the occupations declared to be hazardous, and for that purpose has employed this language:

"By reason of the nature and conditions of, and the means used and provided for doing the work in, said occupations, such service is especially dangerous and hazardous to the workmen therein, because of risks and hazards which are inherent in such occupa-

tions and which are unavoidable by the workmen therein.''

This we take it, was more in explanation of the reason for imposing this new liability upon the employer than an effort to add to or take from the right of action new elements, or elements other than those named in paragraph 3154 and section 7 of article 18 of the Constitution. The legislative statement that in the occupations named the means used and provided for doing the work are dangerous and hazardous, and the risks and hazards therein inherent and unavoidable, may be taken for granted, but at that it is not a declaration that the accident causing the injury or death must have occurred from an inherent danger, or have been unavoidable, before a recovery could be had. The definition of the right is that the injury or death must have been ''caused by an accident due to a condition or conditions of the occupation.'' The legislature had no power to add to or take from this definition. Cooley on Constitutional Limitations, page 99, says:

''Another rule of construction is, when the Constitution defines the circumstances under which a right may be exercised, . . . the specification is an implied prohibition against legislative interference to add to the condition. . . . '' *State* v. *Osborn,* 14 Ariz. 185, 125 Pac 884; 12 C. J. 750.

A limitation on the legislative power may be by direct prohibition or by implication, and when it is by implication its restraints on the legislature are no less binding than when expressly prohibited. The command to the legislature to enact a law making the employer liable to the employee when the latter is injured or killed ''by an accident due to a condition or conditions of the occupation,'' and not due to the employee's negligence, impliedly prohibits the legislature from changing the circumstances giving

rise to the right of action, for, if the legislature may change it in one respect, it could, while pretending to uphold it, so encumber the right as to abolish it altogether, or, on the other hand, could disregard it and extend a right and remedy to the employee under any and all circumstances. But, as indicated above, we do not think the legislature, in its general observation as to the lethal character of the occupations named, intended to qualify or change the elements the Constitution says shall constitute the right.

We are of the opinion that the rights of the employer and employee under this law, when submitted to a court for adjudication, must be determined and settled in accordance with the constitutional definition, that is, the injury or death must have been "caused by an accident due to a condition or conditions of the occupation," and "shall not have been caused by the negligence of the employee killed or injured."

Labor and service in the occupations enumerated are declared and determined to be hazardous. The Standard Dictionary defines hazardous as "exposed to, exposing to, or involving danger, risk of loss or calamity; perilous, risky." The character of the labor or service, therefore, is such that the employee while engaged at his work continuously exposed to danger or risk of loss, and this is true regardless of any precautions on his part or on the part of the employer.

The hazards to which the employee is exposed may be greatly minimized by introducing into the work, and for the employee's protection, the latest and most approved safety appliances and devices, or the hazards may be multiplied by "slipshod" methods or indifferent attention by the employer to the safety of the employee. This contingency was doubtless in the minds of the lawmakers when they made the

liability of the employer depend upon an injury or death "caused by an accident due to a condition or conditions of the occupation," rather than the lack of care or precaution to prevent accidents. This unusual liability, it would seem, was primarily placed upon the employer, to stimulate him to put his business in the safest possible condition, and thereby reduce the number of accidents, and accordingly his liability; for in both the Constitution (section 7, art. 18) and in the statute (paragraph 3154) the introductory words are "to protect the safety of employees in all hazardous occupations"—the principle of liability herein is declared. While the law does not undertake to regulate the conditions of the occupations declared to be hazardous by requiring the use of safety appliances and devices, it does provide in paragraph 3157, Civil Code, that the employer "shall by rules, regulations or instructions, inform all employees in such occupations as to the duties and restrictions of their employment, to the *end of protecting the safety* of employees in such employment." These expressions are admonitions to the employer that the extent of his immunity from liability to the employee for injury or death depends upon a strict observance of the slogan "safety first," by the application to his business of every possible means to prevent accidents. It is the declaration of a policy that may and will affect all employers, but its burdens will fall most lightly upon the ones who diligently endeavor to protect their employees from accident, and this knowledge will stimulate all to do all things possible and necessary, from selfish, if no higher, motives, to save expenses and protect their business.

The dictionary definition of the word "condition" is:

"Mode or state of being; state or situation with regard to external circumstances; essential quality; property; attribute." Webster.

The state of the work or service in the occupation or the essential qualities, properties or attributes of the employment have reference to all of the situations and circumstances surrounding such employment, that is, the condition or conditions may be good or poor, may be favorable or unfavorable, may be safe or unsafe, or the last word in perfection. But, under the statute, the liability of the employer does not depend upon the existence of one or the other. Whatever the condition or conditions, whether good or bad, the liability depends upon the accident being due to them. It follows, therefore, that the negligence of the employer in failing to furnish the employee a safe place to work, or safe tools and implements with which to work, is not the ground upon which his liability is based, inasmuch as he is liable even though he may furnish the employee a safe place to work and safe tools and implements with which to work, if, notwithstanding, the employee is injured or killed by an accident due to a condition or conditions of the occupation. In the former case accidents will be more frequent; more employees will be killed or injured, and the business will have to bear a greater burden because of the negligence, but that does not change the principle upon which the right of action is based.

The condition or conditions that cause the accident resulting in injury or death may be inherent in the occupation, or they may arise from the manner in which the business is carried on. The conditions of the occupation in which the employee does his work involves, not only the place he works, but the tools with which he works, the one as much as the other. He cannot perform his work without tools, nor without being in the place assigned to him. In the present case he could not break rocks without the hammer, nor determine the sizes into which they should be broken

without the grizzly, nor do his work without being on the grizzly. These circumstances, and others that might be named, went to make up the conditions of his work in the hazardous occupation of mining in which he was engaged when injured. The fact that there was a defect in one of the conditions of his work, to wit, in the hammer, does not relieve the employer from liability any more than he would have been relieved from liability for an injury by a piece of flying rock caused by a blow of the hammer. In other words, if in handling a perfect hammer with ordinary care, the employee had been injured by an accident due to a condition or conditions of his work, the employer could not claim exemption from liability. The employer cannot negligently create nor permit a condition, and when an accident results therefrom plead it as a bar to the action, any more than he can claim exemption because the conditions were perfect. We conclude that the contention of defendant that the injury must have been caused by a risk or hazard inherent in the occupation before a recovery could be had is without merit. And it is equally clear the defendant cannot avail itself of its own negligence to defeat the action.

The only thing that will defeat the action and absolve the employer from liability is the negligence of the employee. If the injury or death be not caused by an accident due to a condition or conditions of the occupation, but is caused by the negligence of the employee, he cannot recover, nor can his personal representative or beneficiary. The only risk or hazard the employee assumes is his own negligence.

The conclusion at which we have arrived in this case is not in keeping or accord with what this court has said in *Calumet & Arizona Min. Co.* v. *Chambers,* 20 Ariz. 54, 176 Pac. 839, *Arizona Copper Co.* v. *Burciaga,* 20 Ariz. 85, 177 Pac. 29, *Arizona Eastern R. Co.*

v. *Matthews,* 20 Ariz. 282, 7 A. L. R. 1149, 180 Pac.
159, *Inspiration Cons. Copper Co.* v. *Mendez,* 19 Ariz.
151, 166 Pac. 278, 1183, *Superior & Pittsburg Copper
Co.* v. *Tomich,* 19 Ariz. 182, 165 Pac. 1101, 1185, and
perhaps other cases, in an effort to define the right
of action under the Employers' Liability Law; but,
after much reflection we do not think the expression
of opinion in those cases is a correct exposition of
the law. The writer hereof has long felt (*Superior
& Pittsburg Copper Co.* v. *Tomich, supra,* dissenting
opinion) that the construction of the law as contained
in the above cases unjustifiably and unduly limited
and qualified the right of action given the employee
by the statute and Constitution, and feels no embar-
rassment in overruling those cases to the extent
herein indicated.

The defendant also assigned as error the giving
of the following instructions:

"(1) If the jury find the issues for plaintiff, then
the plaintiff is entitled to recover such actual dam-
ages as the evidence may show he has sustained as
the direct or proximate result of such injury, taking
into consideration his loss of time, his pain and suf-
fering, his necessary and reasonable expenses in med-
ical and surgical aid, so far as the same appear from
the evidence in this case. . . .

"(2) . . . What moneys, if any, he may have been
compelled to lay out in medical treatment, medicines
or nursing, and what moneys he will be obliged to
pay out in the future for medical or surgical treat-
ment or medicine, if any. . . ."

The defendant contends that these instructions are
erroneous, in the respect that they authorize the jury
to include in its verdict, past expenses for medical
and surgical aid, medicines, and nursing, and also
future expenses that he may be put to on the same
account.

The only evidence bearing upon this question is to the effect that the plaintiff was taken to the defendant's hospital, where he received medical and surgical aid and nursing for the period of two months, and that after he was discharged from the hospital, four X-ray pictures of his foot and ankle were taken by a surgeon who testified in the case. There is no evidence that the plaintiff paid for any of this service, or that he assumed any obligation on account thereof. Nor is there any evidence of the value of the surgical and medical services rendered the plaintiff. While we think it might be assumed that no charges for his treatment at the defendant's hospital were contemplated, and that the jury knew this, this much may not be said with respect to the examination by the surgeon who took the X-ray photographs of his foot and ankle. The evidence as to future expenses for medical and surgical treatment, or the probability of any, is equally impotent. That these elements of damage may properly be included in the verdict, when established by legal evidence, we think is well settled. They should, however, not be submitted to the consideration of the jury as elements entering into the damages that the plaintiff sustained, unless he has either paid them or incurred a liability on that account, and not even then without proof of their value.

"When . . . such damages are susceptible of proof with approximate accuracy, and may be measured with some degree of certainty, they should not be left to the guess of the jury, even in actions *ex delicto*. *Parsons* v. *Railway Co.*, 94 Mo. 286, 6 S. W. 464; *Pritchard* v. *Hewitt*, 91 Mo. 547, 4 S. W. 437; 2 Thompson, Trials, § 2077. When so left, it is impossible to tell to what extent a verdict may have been affected by the vague estimates the jury may have placed upon the values, concerning which there was no proof; consequently it is impossible to say

the jury was not prejudiced by this erroneous instruction upon the question of damages. . . . In *Reed* v. *Railroad Co.,* 57 Iowa, 23, 10 N. W. 285, the question presented was directly raised. The Supreme Court of Iowa say: 'Under the instruction in question the jury were directed to include compensation for medical services in their verdict. They doubtless would feel authorized to determine the amount to be allowed therefor, according to their own judgment, without aid of evidence; but the law cannot be administered in this uncertain way. Damages of this kind cannot be found by the jury except upon proof. It will not do to say that the amount of damages allowed by the jury may have been small. We can know nothing about the amount, and, if we could know it to be insignificant, we could not relieve this case from the operation of the familiar rules of law which require damages of the character of those under consideration to be established by proof.' '' *Chicago etc. R. Co.* v. *Butler,* 10 Ind. App. 244, 38 N. E. 1, loc. cit. 5; *Cincinnati H. & D. R. Co.* v. *Armuth,* 180 Ind. 673, 103 N. E. 738; *Indianapolis etc. Co.* v. *Hensley* (Ind.), 105 N. E. 474; *Moran* v. *Dover etc. Ry. Co.,* 74 N. H. 500, 120 Am. St. Rep. 994, 19 L. R. A. (N. S.) 920, and case note, 69 Atl. 884.

The above cases refer to past medical services, and the evidence necessary before they may be submitted to the jury as elements of damage. The evidence with reference to medical services expected to be necessary, furnishes no data whatever upon which to base any compensation to the plaintiff.

As was said in *Page* v. *President etc. Co.,* 34 App. Div. 618, 54 N. Y. Supp. 442:

''True, for such services it could not be fixed with the accuracy that it could for those already rendered; but some proof, at least, might have been given by the expert witnesses who testified as to the permanent character of the injury, not only whether medical services would thereafter be needed, but also as to their character, and their probable duration and value. . . .

"Any attempt to fix the amount of the expenses so liable to be incurred would be the purest guess-work. For that reason the case was not one in which a jury could lawfully estimate and allow compensation for such 'prospective future expense,' and the instruction that they might do so was error."

It is not possible for anyone to say what amount the jury may have allowed the plaintiff for past and future medical and surgical aid. They were told, however, that they might consider these as elements in making up the plaintiff's damages, and, since there was no evidence that the plaintiff had expended or contracted to expend anything, or that there was a probability that he would in the future have to do so on that account, whatever was included in the verdict for medical treatment must of necessity have been arrived at by mere guess.

The plaintiff stated his cause of action in two counts: One under the liability law and one under the common law. Defendant complains that the court erred in not requiring plaintiff to elect upon which cause of action he would proceed before the trial was begun, and in permitting the plaintiff to read both causes of action to the jury. It does not appear that the defendant was or might have been prejudiced by this action of the court.

The defendant's answer raised other questions, but they were all, except the ones we have considered, abandoned on appeal. The only propositions presented to this court for determination are the ones that we have gone into.

For the error committed in giving these instructions, we find it necessary to reverse the case, with directions that the defendant be granted a new trial.

BAKER, J.—I concur in the well-stated opinion of Justice ROSS, particularly upon the point eliminating from the former decisions of this court, in which

the elements going to constitute a cause of action under the Employers' Liability Law are discussed, such expressions as "the risk and hazards must be inherent in the occupation," etc. Such expressions as applied to the constituent elements of the right of the employee to recover damages on account of an accident are confusing and misleading. As I understand the Employers Liability Law, an employee engaged in work in one of the hazardous occupations enumerated in the statute may recover for *any* accident occurring in the ordinary course of events during his work, the only other essentials being that the accident must be due to a condition or conditions of his employment, and not brought about by his sole negligence or fault. In the case at bar, the head of the hammer flying off the handle was a simple accident, liable to occur in any occupation, hazardous or nonhazardous; yet it was due to a condition or conditions of the plaintiff's employment, and, having occurred without his fault, he would be entitled to recover in this action, were it not for the erroneous instruction given on the question of damages.

CUNNINGHAM, C. J. (Dissenting.)—The defendant demurred to the complaint upon the grounds that the Employers' Liability Law is in conflict with the Fourteenth Amendment to the United States Constitution; also because the statute conflicts with sections 4 and 13 of article 2 of the state Constitution; also, because the Employers' Liability Law, upon which the action is founded, violates sections 5 and 7 of article 18, state Constitution, "in that it attempts to prevent the question of contributory negligence and assumption of risk as defenses from being submitted as questions of fact at all times to the jury."

The same objection to the statute is raised in the answer, by pleading assumption of risk, as is known

to the common-law action on the case of negligence, as a defense to this action under the Employers' Liability Law, as follows (paragraph 9 of the answer) :

"Defendant denies that plaintiff's alleged injuries occurred through and were due to the condition or conditions of the occupation of plaintiff in the service of defendant in a hazardous occupation; and defendant denies that plaintiff's injury, such as he sustained, was not due to the negligence of the plaintiff; and defendant denies that at the time of receiving plaintiff's alleged injuries he was engaged in a hazardous and dangerous occupation, as contemplated by chapter 4 of title 14 of Revised Statutes of Arizona Civil Code, 1913."

"Par. 11.   Defendant alleges that the only risks and dangers attendant upon and contributing to the injury received by plaintiff were the usual and ordinary risks attendant upon the work in which the plaintiff was at the time engaged; that they were obvious risks in plain view of plaintiff, as well as of defendant, its agents and servants; that they were known and comprehended by plaintiff, and that plaintiff assumed such risks."

The demurrer and answer quoted raise the question and inquiry whether the plaintiff in an action under the Employers' Liability Law must allege and prove that the accident causing the injury arose out of the extraordinary risks and dangers of the employment; that the employee assumes the plain, obvious, ordinary risks of the employment, and the defendant may plead that fact in defense of the action. The demurrer, in effect, attacks the complaint because it fails to set forth facts showing that the accident arose out of and was the proximate result of a danger which plaintiff did not assume.   This is because this court has held that assumption of risk as a defense to such action is not available to the defendant in this kind of action, and such construction

of the statute causes it to conflict with section 5 of article 18, state Constitution, reading as follows:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."

Paragraph 3159, Employers' Liability Law, restates the same proposition in the following language:

" . . . The question whether the employee may have been guilty of contributory negligence, or has assumed the risk, shall be a question of fact and shall at all times, regardless of the state of the evidence relating thereto, be left to the jury, as provided in section 5, of article 18 of the state Constitution: Provided," etc.

The demurrer interposed is ineffective to raise the question of conflict of the statute with the constitutional provision, section 5, article 18, for the reason that the complaint alleges, and the defendant does not dispute, the fact that the plaintiff was injured while working underground in a mine, and the statute declares and determines as a matter of law that work in a mine is work in a hazardous occupation within the meaning of the Employers' Liability Law. It follows that the complaint states a cause of action under the statute in this respect when these facts appear in the complaint. The plaintiff is not required to go into further detail and anticipate the defense of assumption of risk or contributory negligence.

Under the common-law action for negligence the defenses of assumption of risk and contributory negligence need not be anticipated by the plaintiff, and in justice the rule ought to, and in my opinion does, apply to the pleadings in actions under the said statute, if such defenses are pleadable at all in such actions.

The constitutional question of conflict may reasonably be considered as raised by the defendant's plea of assumption of obvious risks and dangers by the plaintiff as set forth in paragraphs 9 and 11 of the answer quoted. These portions of the answer set forth the defense of assumption of risk as that defense is known and understood in the action of negligence. We have held on several occasions that the Employers' Liability Law does not conflict with section 5 of article 18, and in at least one case (Mendez case, 19 Ariz. 151, 166 Pac. 278, 1183), we discussed the question here raised, and, as I believed, finally disposed of it. Developments in the case at hand seem to indicate otherwise, and for that reason I will again consider the question after noticing the cases previously decided by this court.

In the Mendez case, 19 Ariz. 151, 166 Pac. 278, speaking of the defenses of assumption of risk and contributory negligence as related to the action based on the Employers' Liability Law, we said, pages 161, 162, official vol., 166 Pac. 283:

"And it likewise takes away from the master his common-law right of defense of assumption of ordinary risk by the servant, and leaves to the master the right to defend upon the grounds that the servant assumed the ordinary risks other than risks inherent in the occupation. . . . The statute clearly does not require as a condition of liability that the accident causing the injury proximately results from the master's negligence, and it as clearly does exclude as a matter of defense the assumption of all ordinary and extraordinary risks inherent in the occupation. Such risks and dangers as are inherent in the occupation are declared to be unavoidable risks and dangers, and therefore it necessarily follows that the employee in entering upon his duties does not assume such ordinary inherent risks, although known to him. Such risks as he may assume must be risks and dangers other than risks and dangers inherent in the occupation."

After setting forth arguments showing that the state has a right under its police powers to protect by laws suitable to the purpose, the lives, health, and safety of employees in dangerous occupations (chapter 4, tit. 14, par. 3147) and returning to the matter of the defenses of assumption of risk and of contributory negligence, we said (page 166, 19 Ariz., page 284, 166 Pac.):

"It is undoubtedly true that our statute which limits the common-law rule of assumption of ordinary risks, other than risks and hazards which are inherent in such occupations and which are unavoidable by the workman, thereby contracts the scope of the employer's defense in such cases; but the defense of assumption of risks other than ordinary risks and hazards—and risks and hazards which are not inherent in such occupations—still remains open to him as before, and may be pleaded in defense as before, only the question must be determined by the jury as a fact, and not by the court as a question of law."

To my way of thinking, these reasons are sound, and they are ample to sustain the statute against an attack upon the grounds of constitutional conflict.

The Tomich case, 19 Ariz. 182, 165 Pac. 1101, 1185, called for a decision of the same constitutional question as decided in the Mendez case but objected to the validity of the statute because it takes away the employer's right to defeat the action under the statute by interposing the defense of contributory negligence. This objection was denied, and we held that contributory negligence remains a partial defense as intended by the legislature. After quoting section 5, article 8, we said:

"This section does not restrict the power of the legislature to modify or abolish the defense of contributory negligence. The restriction contained in the section is clear that no law shall be enacted which attempts to make the defenses of contributory negligence or assumption of risk, when interposed, de-

terminable by the courts as matters of law, but such defenses are made to depend upon facts when they are properly interposable, and, interposed, they are required to be established by a preponderance of the evidence to the satisfaction of the jury."

The conceded facts in the case at hand is that the employee injured was working in a mine at the time of the injury, working in an occupation declared a hazardous occupation by the legislature in at least two separate chapters, viz., paragraph 3147 and paragraph 3156. Without discussion, we again declared the act valid as a police regulation, and without conflict with constitutional restrictions. The same result, was again reached in the Davidovitch case, 19 Ariz. 402, 171 Pac. 127, without discussing the question.

In the Chambers case, 20 Ariz. 54, 176 Pac. 839, the statute was again attacked upon the ground that it deprived the defendant of the right to wholly defeat the action by interposing a defense of contributory negligence. The appellant referred to its brief in the Tomich case as a part of its argument in the Chambers case on the constitutional questions. Upon the authority of the Mendez case and of the Tomich case, the statute was again upheld, but no discussion of the question was indulged in, the court evidently being satisfied with the reasons given in said cases theretofore decided and relied upon, further than to say that the proviso contained in paragraph 3159, making contributory negligence a partial defense, is a modification of the common-law rule, and decided its enactment a valid exercise of legislative power relying upon *Missouri P. Ry. Co. v. Castle,* 224 U. S. 541, 56 L. Ed. 875, 32 Sup. Ct. Rep. 606, a Nebraska statute, and upon the Tomich case, *supra.* We said, commenting:

"Certainly, the right to interpose contributory negligence in such actions is not denied by the statute, but is modified, and, as modified by the statute, fully recognized as a just though partial defense." 20 Ariz. 63, 176 Pac 842.

The Burciaga case, 20 Ariz. 85, 177 Pac. 29, presented no question of the defenses of assumption of risks or of contributory negligence. This court decided other questions. No constitutional question was raised. We decided, among other things, that the employer is liable under the statute without regard to negligence; that the right of action does not depend upon negligence as a condition of recovery. We said (20 Ariz. 90, 177 Pac 29):

"Whether the employee's negligence becomes an element in actions based upon such statute depends upon whether the defendant injects into the cause such questions by means of setting up negligence on the part of the plaintiff as contributing to plaintiff's injuries as a partial defense, or the negligence of the employee as the sole proximate, efficient cause of the injury."

The defenses of assumption of risk and contributory negligence were not pleaded in the case nor decided.

In the Matthews case, 20 Ariz. 282, 180 Pac. 159, the defenses of assumption of risk and contributory negligence were pleaded, but this court decided the evidence failed to bring the cause within the liability law, for the reason that the plaintiff was not working in an occupation declared and determined a hazardous occupation within the meaning of the Employers' Liability Law, and recovery was denied. No decision was necessary or was made on the defenses of assumption of risk or contributory negligence in that case.

No constitutional questions were raised in *Bryan* v. *Inspiration Consol. Copper Co.,* 20 Ariz. 485, 181 Pac. 577. In *United Verde Copper Co.* v. *Wiley,* 20

Ariz. 525, 183 Pac. 737, this court again had the constitutional questions presented, and refused to consider them, but relied upon the former decisions of the court and upon the decision of the Supreme Court of the United States in *Arizona Copper Co.* v. *Hammer, etc.,* 250 U. S. 400, 63 L. Ed. 1058, 39 Sup. Ct. Rep. 553, for authority in disallowing the contention as regards the conflict with the Fourteenth Amendment—the parties did not raise the state constitutional question with regard to a conflict of the statute with section 5 of article 18, state Constitution. Likewise in the Swansea Lease, Inc., case, 20 Ariz. 531, 183 Pac. 740, the same constitutional questions were raised as in the Wiley case, and decided as in the Wiley case.

There are cases based upon the Employers' Liability Law, decided since the cases above mentioned were filed, but the question had not been raised again until this case was submitted. This court has given reasons for its decision upholding the statutes as against the attack made upon it from the standpoint of conflict with the state Constitution, in the Mendez case, 19 Ariz. 151–166, 166 Pac. 278, 1183. Also in the Tomich case, 19 Ariz. 182, 165 Pac. 1101, 1185, and in the Chambers case, 20 Ariz. 54, 176 Pac. 839. Other reasons can be given with equal propriety and of equal persuasive force. I will suggest a few more reasons that now occur to me.

First, the Constitution (section 5, art. 18), refers to *defenses* of assumption of risk and contributory negligence, and declares that they "shall, in all cases whatsoever, be a question of fact, and shall at all times be left to the jury." Of course, the expression "in all cases whatsoever" has reference to all cases in which the defenses of assumption of risk and contributory negligence are interposed as affirmative defenses, and where established by the requisite evidence the parties pleading them have a right to the

relief the law recognizes as thereby established. I think this is elementary. The Constitution commands the enactment of a law that will be effective to protect the safety of employees in all hazardous occupations, in mining, smelting, manufacturing, railroad, or street railway transportation, or any other industry, and such statute shall be known as the Employers' Liability Law. By the terms of which law any employer shall be liable for the death or injury, caused by any accident due to a condition or conditions of such occupation, of any employee, in the service of such employer in such hazardous occupations in all cases in which such death or injury of such employee shall not have been caused by the negligence of the employee killed or injured. Section 7, art. 18, state Constitution. The safety of employees in hazardous occupations is the subject matter the legislature is commanded to act upon and furnish a means of protection. In obedience to the command, the legislature very logically determined which of the occupations in which employees are engaged in this state are hazardous occupations within the meaning of the mandate.

The determination reached in this respect appears as paragraph 3156, Employers' Liability Law. The employees engaged in the hazardous occupations within the meaning of the statute who are protected are workmen engaged at manual and mechanical labor in any of the occupations deemed hazardous within the meaning of the statute. Of course, occupations in mining, smelting, manufacturing, railroad, or street railway transportation are hazardous occupations, as all reasonable persons must know and concede. The legislature so declares them in paragraph 3147, and further declares that employment in such occupations is injurious to health and dangerous to life and limb. Work in such occupations is there-

fore subject to regulation by law for the public weal. Whenever a workman in such dangerous occupations is injured or killed from an accident attributable to the dangers of the occupation, and not attributable to the employee's own carelessness, negligence, or inattention to duty, the statute declares, in strict accord with the constitutional mandate, that the employer shall be liable for the death or injury so caused. The statute clearly refers to the dangerous nature of the work in hazardous occupations as the proximate, efficient cause of the accident and resultant injury. Then, as the statute places the cause of the accident upon the occupation, it follows, as a matter of course, that the risks and dangers that accompany the occupation, as the same is ordinarily carried on, are not assumed by the workman, because he cannot work therein and avoid the dangers while performing his duties.

The statute places the risks and hazards of the occupations, which menace the workman, upon the employer—shifts the loss from the servant to the master—decides as a matter of law that the ordinary dangers to the workman that arise in the course of carrying on the business in question is a risk assumed by the employer and so understood by the master and by the servant at the beginning of the relation; and the contract relation is entered into and established with that matter known to both, and supposed to be taken into consideration. The statute places the burden of loss arising from personal injury or death resulting to the employee from accidents occurring from the manner or means used in carrying on the hazardous occupations upon the employer. Therefore, as a matter of law, the employer is compelled to assume the risks which, under the common law, the servant was required to assume.

The hazardous nature of the occupations enumerated in paragraph 3156 is, as a matter of law, the sole proximate, efficient cause of the employee's accidental injury suffered in the course of his employment. The burden of loss from such accidents having been placed upon the employer as a matter of law, then it follows that "assumption of risk" in such occupations, by the employee, is without an existence; the employer has that burden.

The constitutional provision (section 5, art. 18) applies only to matters of *defense,* not to rights of action—applies to issues of fact, not to issues of law. The assumption of risk by the employee, in cases under the Employers' Liability Law, applies to the assumption of risks other than the risks the employer is forced to assume by the statute as a matter of law.

For purposes of illustrating my position, I will suppose that a miner is employed to work in the underground stations of a mine, and proceeds to perform the duties of his employment; that he is informed by some sufficient means, by the agents of the employer giving him individual, actual notice, or by printed signs placed so as to give a reasonably observant man notice to the effect that certain workings are closed because of the dangerous conditions therein, and workmen in the mines are warned to keep out. If a miner is actually informed of this regulation (one which, by paragraph 3157 may be made by the employer), and disregards the warning and goes voluntarily into the dangerous workings for any purpose and is injured, certainly, the employer may set up such facts in defense, and charge the employee with having assumed the risk by violating a reasonable regulation of the occupation. Such a state of facts pleaded in defense will raise an issue of fact in this kind of action, and, if sustained by the

evidence to the satisfaction of the jury, the plaintiff's action is defeated.

In all the enumerated hazardous occupations, in which the statute burdens the employer with the risks, the employer may limit his burden by rules, regulations, or instructions by which the employees in such occupations are informed of the duties and restrictions of their employment (paragraph 3157), and employees so reasonably informed of their duties and restrictions of their employment, who do not heed the information and instructions, but exceed the restrictions of their employment, must in natural right and justice be held to have assumed the risk incurred by their voluntary act. Whether the employer instructed his employee as to the duties and restrictions of the employment, and, if so, whether the accident causing the injury arose from the risks and hazards against which the employer has attempted to protect the employee, through instructions, are questions of fact, and are within the question "whether the employee may have assumed the risk, and such question shall be tried by a jury."

It follows that the employer assumes *all* of the risks and dangers of the occupations deemed hazardous occupations within the meaning of the Employers' Liability Law, unless he limits his statutory assumption of risks (as he may do by following paragraph 3157) to such risks as he cannot eliminate by reasonable instructions to his employees as regards their duties and the restrictions of their employment—all other risks the employer assumes. Hence the defense of assumption of risk by the employee is restricted to risks and hazards of the occupation which may be avoided by the employer's instructions given to the employees as to the duties and restrictions of the employment. This leaves a question of fact for the jury; harmonizes paragraph 3159 with the other

paragraphs of chapter 6, title 14, and with section 5 of article 18, which is necessary to avoid a conflict. I adhere to the former decisions of this court to the effect that the Employers' Liability Law does not conflict with section 5 of article 18, as regards the matter of the defense of assumption of risk by the employee as a fact. As a consequence, the demurrer was correctly overruled, and the answer of the defendant in this case was properly disregarded as setting forth no defense. The answer did not set up a defense to the action by shifting the burden of risk from the defendant to the plaintiff—the statute fixes that matter *prima facie*—and this *prima facie* burden must be removed as indicated.

The defense of contributory negligence is not raised in this instant case, and for that reason cannot be authoritatively determined. Indulging in some ordinary *obiter,* I will say that duties performed in the occupation in a negligent and careless manner by the employee, in violation of the instruction given with regard to the manner or means of performing the duties, and an accident happens, caused from the ordinary dangers of the occupation concurring with the negligence of the employee, without either concurring cause the accident would not have happened, therefore natural justice requires that the employer should be allowed to show that the hazardous nature of the occupation was not the sole cause of the accident, but with the failure of the employee to use ordinary care for his safety the accident resulted. I am of the opinion that such state of facts would present a proper case for the interposition of contributory negligence as a defense to the action, and if such state of facts are pleaded by the defendant an issue of fact is raised, and it must be determined, as such issues are required to be determined, by the jury, by section 5, article 18, state Constitution, and by para-

graph 3159, Employers' Liability Law. Such is the effect of the decision of this court in the Chambers case, *supra,* and I still adhere to that decision.

The majority opinion refuses to go beyond the legislative mandate (section 7, article 18, and paragraph 3159, Employers' Liability Law), to uphold the statute, directly placing the grounds for decision upon the requirement that any employer "shall be liable for the death or injury caused by any accident due to a condition or conditions of such occupation of any employee in the service of such employer in such hazardous occupations," etc. Of course, no recovery can be had unless the accident causing the injury or death was due to the condition or conditions of the occupation (a hazardous occupation within the meaning of paragraph 3154), and was not caused by the negligence of the employee killed or injured. Of the necessity that such facts are present before a recovery can be had under the Employers' Liability Law, there is no room for debate. This court has flatly so held in the Mendez case, in the Tomich case, in the Chambers case, in the Burciaga case, in the Matthews case, and in a number of other cases; but the issue of law raised in this case goes further, and contends that, conceding that the employee suffered an injury in a hazardous occupation as understood to be within the occupations declared hazardous in the Employers' Liability Law, and the accident causing the injury or death of the employee was caused by an accident due to a condition or conditions of the occupation, and not to the negligence of the employee, all as stated in section 7, article 18, and in paragraph 3154, executing the constitutional mandate, still the defendant is given the right to interpose the defense of assumption of risk and the defense of contributory negligence as complete defenses to any action based upon the Employers' Liability Law, because

section 5 of article 18, state Constitution, preserves that right.

This is a question that reaches beyond the face of the statute, and requires an interpretation of the Constitution, so that section 5 of article 18 will harmonize with section 7 of article 18, and hence avoid an apparent conflict between those two sections of the Constitution, and preserve the validity of chapter 6, title 14, Employers' Liability Law. The Chambers, Tomich, and Mendez cases observed the distinction, and held that the statute does not conflict as regards the defenses of assumption of risk as applied to work, labor, and services in the enumerated hazardous occupations. Paragraph 3156. Of course, this decision includes a direct holding that the accident causing the injury must be attributable to a condition or conditions of the occupation, and not attributable to the negligence of the injured employee, but goes further, and properly so, as the legislative intent is manifest, holding that the defendant cannot allege and prove the allegation that the employee killed or injured did, as a fact, assume the dangers of the condition or conditions of the occupation out of which the accident and injury arose. I am convinced that such decisions are sound, and to have decided that section 5 of article 18 applies to every action brought under the Employers' Liability Law is to place the injured employee in a position of a plaintiff under the common-law action of negligence, again carrying the old burden of assumption of risk as a matter of law, when the accident arose from an obviously dangerous condition of the work. As a consequence, the Employers' Liability Law becomes a mere locust hull, cast off by the living thing. The spirit of the statute has departed. Of what value is a statute which grants a right of action to recover for injuries inflicted by accidents arising out of the conditions of

the occupations, over which the employee has no control, but to which conditions he is compelled to submit his safety, when the employer is permitted to plead assumption of risk and contributory negligence, as those defenses are known to the common law? In that event he is no better off than he would be to pursue the common-law remedy—the legislature has done a futile thing for the injured employee; with one hand it has given him a new right of action and with the other hand it has given his opponent a right to interpose an old defense preventing recovery.

But the appellant in this case says that because the complaint of the plaintiff shows that the plaintiff was not injured by an accident arising out of and in the course of the employment, and due to a condition or conditions of such employment, and does show that he was injured by the head of a hammer coming off and striking him on the foot, and because the complaint does not allege facts which show that plaintiff was injured by any inherent risk or hazard which was unavoidable by him—rather, he was injured by a known and obvious risk, to wit, the falling off of the head of the hammer and striking plaintiff's foot—therefore the complaint fails to state a cause of action, and was subject to defendant's demurrer.

The complaint shows that the plaintiff was working at duties in an occupation declared hazardous, as an employee of the defendant, when the accident happened. This is not denied, and hence it is not competent for the defendant to predicate a defense raising an issue of fact upon a matter that the law declares already existing. The fact that the plaintiff is working in a mine performing duties of his employment, and is injured from an accident that is imminent at all times, any mining accident, the law comes forward and says that the proximate cause

of his injury is the hazardous occupation, the risks and hazards which are inherent in the occupation of mining; and the employer is liable for all the resultant damages so inflicted on the employee.

The counsel have failed to understand the decisions of this court, else they would not now contend that our decisions require the plaintiff to allege more detail of facts in this particular than the fact that the injured employee was working in a hazardous occupation as defined and enumerated in the Employers' Liability Law, and was injured from an accident happening from conditions of the business as carried on, and did not happen from the sole negligence of the employee injured. A lack of understanding of the construction placed on the statute by this court may be a sufficient excuse for the appellant to distort the obvious meaning of the language used by the court giving its reasons, and then with this distorted meaning argue that the decisions of this court required the plaintiff to allege and prove that the accident arose from inherent risks and hazards, and was unavoidable by the employee as a fact before he could recover, and that all obvious, ordinary risks are assumed by the employer; that the employer can show positive negligence on his part as the proximate cause of the injury, and then, upon showing contributory negligence on the part of the employee, he can reduce the amount of recovery.

The last contention would be the subject for this court to ignore as a reduction to an absurdity but for the reason that appellant's counsel actually insisted upon this proposition, and did so in a serious manner in oral argument. Nothing could be more absurd than to charge an appellate court and a legislature with having placed a premium on a wrong. How can counsel honestly make such a charge? Can counsel be so devoid of understanding as to reach

such conclusion honestly? These questions go un-answered by me—counsel seem to be serious and anxious to annul the Employers' Liability Law. That, perhaps, is the reason they charge this court with such absurdity, but I do not know.

I pass the questions raised upon constitutional validity and conflict, as not only being without merit, but also because this court has solemnly decided those questions adversely to this appellant's contention. A! distorted application of the language used in express-ing reasons for such decisions does not persuade me to depart from those decisions.

I sincerely regret that the other members of the court have been partially persuaded, if I rightly un-derstand the decision reached by them, to overrule the Mendez, Tomich, Chambers, Burciaga, and Mat-thews cases in any respect. I am at a loss to know whether the court is intending to overrule the deci-sions holding the Employers' Liability Law without conflict with section 5 of article 18, and therefore valid; or whether the court intends to limit the de-cisions in those cases to questions of hazardous occu-pations as defined in the statute, and reject the idea that the constitutional provision has any application to the Employers' Liability Law. Certainly, the word "overrule" means more than criticism of lan-guage used, but it is the word used when a former decision is absolutely repudiated by the court and an-nulled as a decision, without respect to the language used in giving reasons for the decision.

The peculiar situation that these matters present to my comprehension is that the decisions in the very cases named as overruled fall precisely and exactly within the decision now reached by the majority upon the same questions, although different reasons are given for the decisions, and they go further, and reach the foundation of the constitutional objection.

XXII Ariz.—37

I therefore dissent from the decision overruling the cases mentioned.

I find no request for instructions to the jury to refrain from considering the value of medical services rendered and to be rendered, because of the absence of any proof of value of such services. The court confined the jury's findings in this respect to actual damages "as the evidence may show, . . . " taking into consideration his "necessary and reasonable expenses in medical and surgical aid, so far as the same appears from the evidence in this case. . . . What moneys, if any, he may have been compelled to lay out in medical treatment, medicines, or nursing, and what moneys he will be obliged to pay out in the future for medical or surgical treatment or medicines, if any. . . . "

In order to hold that the defendant has suffered an injury from these instructions, we must conclude that the jury has disregarded the instructions to the effect that the jury must limit the damages to the amount of actual damages "as the evidence may show," that the jury disregarded the instruction and allowed damages not shown in the evidence, to which conclusion I do not agree. Further than this, I express no opinion in this regard.