## DRAZICH v. RAY CONSOL. COPPER CO.

(Circuit Court of Appeals, Ninth Circuit.   December 5, 1921.)

No. 3484.

1. **Master and servant ☞258(10)—Allegation of negligence unnecessary under state Constitution.**

Under Const. Ariz. art. 18, § 7, making an employer in a hazardous occupation liable for injuries caused by an accident due to conditions of the occupation, and not by the negligence of the employee, regardless of the employer's negligence, that complaint for injuries in a mine does not count on defendant's negligence is immaterial.

2. **Master and servant ☞261(3)—Allegation negativing contributory negligence necessary.**

Under Const. Ariz. art. 18, § 7, in a servant's action for injuries arising out of his employment, an allegation that the injuries were due to conditions of his occupation, and not to plaintiff's negligence, was proper and necessary.

3. **Master and servant ☞289(1)—Miner's contributory negligence question for jury.**

In an action for injuries to a workman, who slipped and fell while loading timbers on cars in a drift of a mine, *held*, that the question whether the accident was caused by the plaintiff's negligence was a question for the jury.

In Error to the District Court of the United States for the District of Arizona; Jeremiah Netterer, Judge.

Suit by Andre Drazich against the Ray Consolidated Copper Company. Judgment for defendant. Plaintiff's motion for new trial was denied, and plaintiff brings error. Affirmed.

F. C. Struckmeyer, of Phœnix, Ariz., for plaintiff in error.

Chalmers, Stahl, Fennemore & Longan, of Phœnix, Ariz., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge.   The plaintiff in error sued the defendant in error to recover for personal injuries sustained by him while working as an employee in the mine of the company in Pinal county, Ariz., by reason, according to the allegations of the complaint, "of an accident arising out of and in the course of such" employment, and "due to a condition or conditions of said occupation and employment, in that, while about his said labor, service, and employment, cleaning up and repairing certain underground workings or drift, upon a certain level or drift called the 20–20 level, and while loading timbers, rigs, and other material upon cars standing on a track in said mine, the plaintiff, while in the exercise of due care for his own safety, lost his footing and slipped and fell, and thereby" sustained the injuries for which the action was brought. The answer of the defendant company was to the effect that, if the plaintiff was injured at all, such injuries were the result and were caused by his own negligence, and that such injuries,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

if they occurred, were due to risks well known to him, and which he assumed upon taking his employment.

Upon the trial, which was with a jury, besides the medical witnesses, whose testimony as the case comes here is not for consideration, the sole witness was the plaintiff himself. He testified in effect that his business in life was that of timber man in mines, having worked eight years in California "timbering all the time"; that he commenced work in that capacity for the defendant company April 8, 1917, and continued doing so until he was injured, June 30, 1918. We quote the substance of his testimony regarding the accident, given on direct examination:

"On the day that I was hurt I went on shift at 8 o'clock in the morning, and was hurt about 10 o'clock—maybe a little over 10. On the day I was hurt, I was working in the 20–20 level. I was working in a drift. I repaired the drift. The drift was all timbered, mashed and broken; that was an old drift. I knocked the old timber down, broke it and smashed it; broke it down and made more room, to make more room; and I was putting in new timbers. After I took the old timbers out from the walls of the drift, I took them away, because there was no place for me to work. I took the old timbers to the truck and sent them to the station, and the station pull out. There were about 30 or 40 empty drifts between me and the station. There was a track in this drift. There is a track in every drift. The timbers I was taking out were 14x16, 8 feet long. The timbers had not been in the drift long, because that was a system. It was rotten ground, and the timber didn't stay long; maybe two or three weeks, that is all; maybe one week, because of the cave-in system; it would cave in and smash it and break everything. I was hurt on the 13th of June, at 10 o'clock in the morning. Just before I was hurt, I sent my helper to bring the truck. He brought the truck. I don't know what my helper's name was. My helper was changing all of the time, because, if he was short a man, he took the helper away with him, and says, 'You work alone.' My helper was a Mexican. After my helper brought the truck, I went to put up the old timber in the truck, because there was nowhere to work. There was both sides, lots of muck on both sides of the track; only 2 feet on the side of the timbering, and there was lots of muck, and on the center of the track, and I wanted to try to put that timber in the truck, and I put one in, and the helper held that in, what I put in the truck, and I got to put the other in, and my foot slipped on the wet ground, and I fell down and knocked on the knee. There was close to me two car men, and I called the two car men to come and help me. There was just me and the helper in the drift; just me and the Mexican. The old timbering; a man cannot go like this. Where I worked, I made a big place to put in the timbering. A man can't go through the old timbering; just a small hole. The drift was about 8 feet wide on the bottom. The track was in the center of the drift. There was lots of muck in the drift; this muck was both sides of the track, and in the middle of the track, too. There was no floor in the drift. The ground of the drift was wet. When I got hold of the timber, the truck was like this (indicating); both sides of the truck was lots of muck. Well, I was standing like this, left foot like this, and I went to put the timber to swing on the truck, and this leg slipped down, and knocked me down, and I fell right away. My helper was with me, standing on that place. I was lifting the end of the timber where he was first. After that I came and lifted the other end, and he held that end where I left. That was the only way that I could put the timber in the truck. When I fell down I felt pain right away."

Other testimony related to the extent of his injuries.

[1] According to the latest decision of the Supreme Court of Arizona—Consolidated Arizona Smelting Co. v. Egich (Ariz.) 199 Pac.

132, 134 (August 22, 1921)—one of the three conditions creating and defining a new liability of an employer to the employee by section 7, article 18. of the Constitution of that state, is that the injury or death while in the service of the employer in a hazardous occupation "must have been caused by an accident due to a condition or conditions of the occupation, and not caused by the negligence of the employee killed or injured."

The validity of that provision of the Constitution of Arizona, making the employer liable for such injuries or death regardless of whether he or it was in any way negligent, was sustained by the Supreme Court of the United States in the cases reported under the title "Arizona Employers' Liability Cases," in 250 U. S. 400, 39 Sup. Ct. 553, 3 L. Ed. 1058, 6 A. L. R. 1537 et seq.—four of the Justices dissenting. The fact, therefore, that the complaint in the present case does not count upon any negligence on the part of the defendant mining company is immaterial.

[2] The law of Arizona, however, as has been seen, does require that the plaintiff in such an action shall himself have been without negligence. and so the complaint in the present case expressly alleged, not only that the accident by which the plaintiff received his alleged injuries was due to a condition or conditions of his occupation, but was not caused by his negligence.

[3] Whether or not the accident was caused by the negligence of the plaintiff was plainly a question of fact for the determination of the jury, and the jury having decided against the plaintiff, and the trial court having approved the finding by its refusal to grant the plaintiff's motion for a new trial, we can see nothing in the testimony of the plaintiff himself, which is above set out, upon which we can properly reverse the judgment.

Accordingly the judgment is affirmed.